[Crim. No. 5922. Fifth Dist. Aug. 11, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY FORD, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Parts II and III are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

986

**COUNSEL**

Frank Offen, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Nelson P. Kempsky, Willard F. Jones and Michael T. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ANDREEN, Acting P. J.**—Defendant appeals following conviction after jury trial of attempting to prevent a witness from testifying by means of threat (Pen. Code, § 136.1). We reverse.

## I. FACTS

Defendant and two others were engaged in a preliminary hearing on 16 felonies, mainly robberies and burglaries. When Alvin Scott, who had turned state's evidence, finished his testimony, he was directed to a jury room. Scott was standing in the hall doorway of this room when, the proceedings having been adjourned for the day, defendant Ford and his codefendants exited the courtroom and were being escorted down the hall by the bailiffs, away from Scott, toward the elevator. Ford turned and looked at Scott and yelled, "You punk mother fucker, we'll get you, you've got kids." Defendant was 50 to 60 feet from Scott when he made the threat.

The bailiff who was escorting the defendants to the elevator, the sheriff's detective who was the investigating officer and who had just testified, and an officer in a room off the hall on an unrelated matter, all heard the defendant yell. There was no testimony that any one else was in that hallway other than the defendants, the bailiffs and Scott.

Scott, who had returned from out of state to testify at the preliminary hearing, had a child living in Fresno County. Scott had known the defendant for over six years and, as a result of defendant's statement, felt threatened and feared defendant's relatives might try to carry out defendant's threat. Some of defendant's relatives were at the preliminary hearing when Scott testified. Scott did eventually testify at the trial.

## II. Should Defendant's 995 Motion Have Been Granted Because of His Lack of Notice of the Charges Against Him?[2]

## III. Was the Amendment to the Information Improper?[3]

## IV. Was Defendant's Conviction Supported by Sufficient Evidence?

Defendant contends the evidence is insufficient to support the verdict. There is no merit to this position.

■ The test on appeal is not whether the evidence establishes guilt beyond a reasonable doubt but whether the evidence could persuade *any* reasonable jury to have found guilt beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738].): "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (At p. 578.) Furthermore, to reverse a conviction for insufficiency of the evidence it must " 'clearly appear that upon no hypothesis whatever is there substantial evidence to support it.' " (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 363 [157 Cal.Rptr. 769].)

The uncontradicted testimony of Scott and the three sheriff's officers establish that defendant made the threat to Scott.

Defendant claims the information charges him with preventing Scott from testifying in the municipal court proceedings. Since Scott did in fact testify in municipal court, defendant asserts he cannot be guilty of preventing testimony which was actually given.

Defendant's contention has been considered and rejected in *People* v. *Thomas* (1978) 83 Cal.App.3d 511, 513, footnote 3 [148 Cal.Rptr. 52]: "That [the witness] had been called and [testified in municipal court on the day preceding the threat], does not, as [defendant] contends, compel the conclusion that she was not going to be called as a witness or that she had been excused as a witness. Thus [defendant's] argument that she 'could not be "persuaded or dissuaded" from doing what she had already done' is based upon the false premise that she was not a potential future witness." Similarly, in this case, Scott also was a potential future witness. There is

---

[2]See footnote 1, *ante,* as to parts II and III.
[3]See footnote 1, *ante,* as to parts II and III.

no indication on the record that he was excused from giving further testimony.

■ Defendant's main thrust goes to the temporal nature of the threat. Defendant claims the threat was made in retaliation for the testimony Scott gave at the preliminary hearing and was not made to prevent Scott from further testifying. Defendant bases this interpretation on the fact that at no time did he say "I don't want to see you in court again," or any other such statement. In his reply brief, defendant asserts his "language could only be understood to mean that he was making these statements against the witness for the witness' prior activities of turning him in and testifying at the preliminary examination. There is nothing in the plain meaning of the words to indicate that anything further was intended." The words "You punk mother fucker, we'll get you, you've got kids," have more than a plain meaning, as do all words. These words also carry with them an inherent baggage of connotation which plainly suggests to the auditor, "You are in trouble for testifying so do not let it happen again or things will only get worse." The jury could interpret defendant's remarks to Scott as a warning or threat not to testify in the future.

## V. Should the Trial Court Have Instructed That Threatening a Witness Is a Specific Intent Crime?

■ The jury was instructed on general intent. There was no request for an instruction on specific intent, but defendant argues that the court had a *sua sponte* duty to so instruct. We agree.

■ The terms "specific intent" and "general intent" are difficult to define and apply as pointed out in *People* v. *Daniels* (1975) 14 Cal.3d 857, 860 [122 Cal.Rptr. 872, 537 P.2d 1232]. In *Daniels,* the court emphasized "an important temporal difference" between the two terms and observed: "'When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is [general intent]. When the definition refers to a defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent.'" (*Ibid.*)

■ Penal Code section 136.1, subdivision (c)(1), proscribes one from (among other things) using a threat of violence in an attempt to dissuade a witness from testifying. Unless the actions or statements are meant to achieve the consequence of affecting a potential witness' testimony, no crime has been committed. The statement, "You punk mother fucker, we'll get you, you've got kids," can be interpreted as a simple angry statement

of impending revenge: "You did this to me and you will pay for it." If this is the proper interpretation, the crime was not committed.

On the other hand, the proper interpretation could be: "You did this to me and if you do it again you will pay. You better not testify in the future or we'll get your kids." If the jury found this interpretation, defendant has violated the section. Thus, in the words of *Daniels, supra,* 14 Cal.3d 857, "the definition refers to a defendant's intent to . . . achieve some additional consequence," and is therefore a specific intent crime.

Once the crime has been committed, it makes no difference whether the witness does or does not testify. In this respect it is like a charge of bribery. The various forms of bribery require specific intent. (See 2 CALJIC (4th ed. 1979) appen. D, pp. 352-354.) The crime of bribery is complete when the defendant makes the offer with a corrupt intent. (*People* v. *Brigham* (1945) 72 Cal.App.2d 1, 6, 7 [163 Cal.Rptr. 891].)

Likewise, it is analogous to solicitation to commit murder. Such crime requires specific intent and is complete when the solicitation is made. (*People* v. *Bottger* (1983) 142 Cal.App.3d 974, 981 [191 Cal.Rptr. 408].)

## VI. CONCLUSION

The failure to instruct on specific intent was error. The error mandates reversal. (*People* v. *Wickersham* (1982) 32 Cal.3d 307 [185 Cal.Rptr. 436, 650 P.2d 311].) The judgment is reversed.

Woolpert, J., and Martin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 19, 1983.