[No. C021470. Third Dist. Sept. 16, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
SHELDON NEWSOME et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I through IV and parts VI through VIII.

904

## COUNSEL

Alisa M. Weisman and Wesley A. Van Winkle, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Margaret Venturi and Thomas H. Beattie, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MORRISON, J.**—Defendants Sheldon Newsome and Eugene G. Redman, who both have criminal records that include two serious felony convictions, robbed at gunpoint the occupants of a house that was under police surveillance for suspected drug activity. Newsome later threatened two of the victims. Newsome was sentenced to an aggregate determinate term of 24 years and a life sentence with a minimum term of 125 years. Redman was sentenced to 22 years and a life sentence with a minimum of 75 years.

In the published portion of this opinion, we address an issue the parties have not raised. We determine that consecutive sentences were not mandatory under the "Three Strikes" law and the trial court misunderstood the scope of its discretion as to this aspect of sentencing. Accordingly, we remand for resentencing. In the unpublished portion, we address defendants' contentions. They raise numerous challenges to the Three Strikes law and to established jury instructions; each joins in the other's arguments. In addition, Newsome contends it was an abuse of discretion not to sever the charge of possession of a firearm by a felon. Redman contends the trial court lacked jurisdiction because an information was not timely filed and his motion to suppress evidence seized in the search of his residence should have been granted. We find no merit in these contentions.

### FACTUAL AND PROCEDURAL BACKGROUND

The Sacramento police suspected drug activity at 3325 22nd Avenue. Sergeant de Borda was conducting surveillance of the residence on the

afternoon of August 2, 1994. He was on the levee behind a retaining wall, using cameras and binoculars. About 4:30 p.m. he saw three Black males arrive at the residence. Newsome and Redman were two; the other man was never identified. Redman was wearing a football jersey with the number 85 and a black baseball cap. After about 18 minutes Nicholas Correa arrived. Then a young Hispanic man arrived and was yanked inside. Redman came out with the young man and left on a bike. A large woman then arrived.

Redman returned in a Ford Bronco. He honked the horn and then went inside. He returned to the Bronco carrying a camera bag and a travel bag. Redman and Newsome left in the Bronco. The police trailed the Bronco, but lost it.

The police received information that a robbery had taken place inside the residence. One of the pictures de Borda had taken showed Redman holding a gun. The Bronco was registered to Redman's girlfriend, Debra Fontes.

The police contacted Redman's federal parole agent and federal agents obtained a search warrant for Redman's residence. The warrant authorized the search for weapons and related evidence. Sergeant de Borda accompanied the federal agents during the search. He found the camera bag that Redman had carried from the residence and the jersey and cap he wore. Inside the camera bag were knives and tools later identified as taken during the robbery.

A search warrant was issued for the residence under surveillance about one week later. Carla Mollan and her husband, Samuel Garcia, lived there. They were arrested on drug charges. They confirmed that a robbery had taken place on August 2; both identified Newsome as one of the robbers. Mollan had known him a few weeks. Neither Mollan nor Garcia could identify the other robbers.

Mollan and Garcia described the robbery. When Mollan saw Newsome and a friend approach the house, she yelled to her husband, "Sheldon is here, and I think he is going to get us." Newsome asked if his friend could use the bathroom. The friend came out of the bathroom with a gun and yelled for everyone to get down. Newsome also had a gun; he told Mollan he was sent there to put her out of business. Mollan explained: "He was here to tax me because his people did not want me in business any more."

Newsome took Mollan in the bedroom and removed her blouse and bra to search for weapons. Mollan and Garcia were handcuffed and forced to the floor at gunpoint. Newsome and his companions robbed them of money,

drugs, jewelry, tools, a knife collection, a VCR, and a mountain bike. During the robbery, Correa came by to pick up his girlfriend's jacket that had been left as collateral for drugs. When he walked in the kitchen he saw a gun barrel; he was tied up and his wallet stolen. A neighbor who lived over the garage (the large woman) also came by. Her top was removed and she was forced to the floor.

No one reported the robbery. Newsome had threatened Mollan's eight-year-old daughter.

At Newsome's preliminary hearing, while Garcia was testifying, Newsome mouthed the words, "[d]on't do it" and put his finger to his head in the form of a gun. In the custody holding area at the courthouse, Newsome became agitated when he saw Mollan. He yelled, "[Y]ou better do what's right. I'm getting sick of this shit. I will give Campos $5,000 to firebomb your ass." The trial of firebomber Richard Campos was going on at the time. Later, in a transport van, Newsome threatened Mollan again. "You have 24 hours to correct the problem or I will get my Tech 9 and take care of business like I did before."

At an administrative disciplinary hearing, Newsome admitted he made the threats, but contended he was joking.

Newsome and Redman were charged with four counts of robbery (Pen. Code, § 211; all further unspecified references are to this code), with the allegation they used a firearm in the commission of these offenses (§ 12022.5, subd. (a)). Each was charged as a felon in possession of a firearm (§ 12021, subd. (a)). Newsome was charged with two counts of dissuading a witness (§ 136.1, subd. (c)(1)). It was alleged each defendant had two serious felony convictions which brought him under the Three Strikes law (§ 667, subds. (b)-(i)), as well as eligible for the five-year enhancement of section 667, subdivision (a). It was further alleged that Newsome had served two prison terms, qualifying for one-year enhancements under section 667.5, subdivision (b).

When the fourth robbery victim failed to appear after being subpoenaed and could not be located, the People moved to dismiss one robbery count for insufficient evidence. The motion was granted.

Newsome and Redman both presented alibi defenses. Redman's girlfriend testified he was working at Googenheimer's. She got home from work at 5:30 p.m. and he called shortly thereafter. She claimed the jersey the police found belonged to a friend of her brother's. A friend testified Redman was

working with him at the Stillwater Cafe on August 2. They got off work at 2:30 p.m, cashed their paychecks, bought gas, and had a few beers before going home. Another friend testified Redman came by shortly after 5:00 p.m.

Cristan Eiserman, a state worker, testified she first met Newsome the early part of August through Charles Harris. Harris paged her at work one afternoon; she picked him up and they met Newsome, who was on a bike. Newsome complained his feet hurt, so Harris rode the bike and Newsome drove with Eiserman. They went to Togo's, then to a house on DeSoto Street where they waited half an hour for Harris. Next they went to a friend's. There Harris spoke on the phone about wanting visitation with his son that day because it was his son's birthday. They left the friend's at 6:30 p.m. and spent the evening together. Eiserman did not remember the exact day of these events, but Harris and Newsome told her August 2 was the son's birthday.

The jury returned guilty verdicts on all counts, finding true the gun use allegation on the robbery counts. The trial court found the allegations of prior convictions and prison terms true.

DISCUSSION

I.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

V. *Calculation of Sentence*

Both defendants were sentenced under section 667, subdivision (e)(2)(A) which provides: "If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:

"(i) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions.

"(ii) Imprisonment in the state prison for 25 years.

"(iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter

*See footnote, *ante,* page 902.

4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046."

The court sentenced each defendant to a consecutive life term with a minimum term of 25 years, alternative (ii), for each felony count. Redman received an unstayed sentence of 75 years to life for the 3 robbery counts. Newsome was sentenced to one hundred and twenty-five years to life for the three robberies and two counts of threatening a witness.[5] The court also imposed a four-year enhancement for firearm use for each of the three robbery counts, two 5-year enhancements for prior felony convictions for each defendant, and two additional one-year enhancements for prior prison terms for Newsome.

## A.   *Consecutive Sentences*

■      Before we address Newsome's contentions regarding the calculation of his sentence, we first consider whether the court was correct in its belief that consecutive sentences were mandatory under the Three Strikes law. Defendants do not challenge the trial court's finding that consecutive sentences were mandated. Nonetheless, if consecutive sentences were not required and the trial court misunderstood its sentencing discretion, then defendants are entitled to resentencing. (See *People* v. *Belmontes* (1983) 34 Cal.3d 335, 348, and fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686].) Whether consecutive sentences are mandatory in this case raises important questions of the interpretation of the Three Strikes law. Unlike the sentencing issues Newsome raises, the issue of mandatory consecutive sentences cannot be considered settled. The California Supreme Court has granted review on this issue. (*People* v. *Nelson*, review granted May 29, 1996 (S053008).)[6]

Resolution of this issue requires consideration of several provisions of Three Strikes law that address consecutive sentencing. We begin with the provisions of subdivision (c) of section 667.[7]

"(c) Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more

[5]The court imposed a sentence of 25 years to life for the felon in possession of a firearm charge as to each defendant; execution of these sentences was stayed pursuant to section 654.

[6]The grant of review stated: "The issues to be argued before this court shall be limited to whether consecutive sentences are mandatory under the three strikes law when the crimes occur on the same occasion and arise out of the same set of operative facts." (*People* v. *Nelson*, Supreme Ct. Mins., May 29, 1996.)

[7]The trial court cited section 1170.12, subdivision (a)(7) as requiring consecutive sentences. Since the crimes were committed in the summer of 1994, before the initiative version of Three Strikes was passed, defendants were subject to the statutory version of Three Strikes, section 667, subdivisions (b) through (i). We confine our discussion to this statute.

prior felony convictions as defined in subdivision (d), the court shall adhere to each of the following:

"(1) There shall not be an aggregate term limitation for purposes of consecutive sentencing for any subsequent felony conviction.

". . . . . . . . . . . . . . . . . . . . . . . .

"(6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e).

"(7) If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.

"(8) Any sentence imposed pursuant to subdivision (e) will be imposed consecutive to any other sentence which the defendant is already serving, unless otherwise provided by law." (§ 667, subd. (c)(1), (6)-(8).)

As the opening language of section 667, subdivision (c) indicates, these provisions apply to defendants with one or two strikes. Paragraph (1) eliminates any aggregate limit on consecutive sentences and paragraph (8) applies where the defendant is currently serving another sentence. We need be concerned only with paragraphs (6) and (7). These paragraphs require consecutive sentences under certain circumstances. They are not limitations on the trial court's ability to impose consecutive sentences, but require them in certain circumstances "notwithstanding any other law." Paragraph (6) requires consecutive sentences for each current felony conviction that is "not committed on the same occasion, and not arising from the same set of operative facts." Paragraph (7) applies where there are two or more current convictions for serious or violent felonies "as described in paragraph (6)." Since subdivision (c)(6) is the only paragraph (6) in the Three Strikes law, we read paragraph (7) to be limited to current serious or violent felonies that are "not committed on the same occasion, and not arising from the same set of operative facts." While the provisions of paragraphs (6) and (7) overlap— both requiring consecutive sentences for current felonies, serious or not, committed on different occasions—paragraph (7) is broader. It requires consecutive sentences for "any other conviction" for which the defendant may be consecutively sentenced. This would include not only current felony

convictions, but also misdemeanor convictions, and other convictions for which the defendant had not yet begun serving his sentence.

Newsome's two acts of threatening a witness occurred on separate occasions, one in court and the second in the holding area. Consecutive sentences for these offenses were mandatory under section 667, subdivision (c)(6). The robbery convictions pose a more difficult question.

Each defendant has three current convictions for robbery. Robbery is a serious felony. (§ 1192.7, subd. (c)(19).) Therefore, each defendant had to receive consecutive sentences for each robbery conviction under section 667, subdivision (c)(7) if they were "not committed on the same occasion, and not arising from the same set of operative facts." This phrase is not defined in the Three Strikes law. The "same set of operative facts" language has been construed to apply a section 654 analysis to multiple current convictions. (*People* v. *McKee* (1995) 36 Cal.App.4th 540, 546 [42 Cal.Rptr.2d 707].) The language "serves an important function, one that is readily apparent. It applies the principle of section 654 to multiple current crimes. Without it a strong argument could be made that the statute allows a person whose single act violates more than one penal law to be punished for each law the person violated. The basis of that construction would have been the 'notwithstanding any other law' provision that introduces the whole of section 667, subdivision (c). The most obvious 'other law' addressed in this context is section 654. The 'same set of operative facts' clause in section 667, subdivision (c)(6) applies this important feature of section 654, and avoids overly harsh results and possible constitutional issues that would arise without it." (*People* v. *Martin* (1995) 32 Cal.App.4th 656, 664 [38 Cal.Rptr.2d 776].)

In *People* v. *Carter* (1995) 41 Cal.App.4th 683 [48 Cal.Rptr.2d 726], the defendant fired three shots at three men and was convicted of three counts of attempted murder. He had one prior serious felony or "strike." The trial court sentenced him to concurrent sentences on the second and third attempted murder counts. The appellate court found this to be an unauthorized sentence. The court noted that a section 654 analysis was appropriate in determining whether consecutive sentences were required under subdivision (c) of section 667. (41 Cal.App.4th at p. 688.) According to *Neal* v. *State of California* (1960) 55 Cal.2d 11, 20-21 [9 Cal.Rptr. 607, 357 P.2d 839], section 654 does not limit punishment for crimes of violence against multiple victims. (*Carter, supra,* at p. 689.) The court concluded that since defendant could be sentenced consecutively under section 654, he must be sentenced consecutively under section 667, subdivision (c). (41 Cal.App.4th at p. 689.) We cannot agree.

Determining whether consecutive sentences are required under section 667, subdivision (c)(7) is a matter of statutory construction. ■ "In

interpreting the meaning of a statute we begin, as we must, with the language used. Under familiar rules of construction, words in a statute must be given the meaning they bear in ordinary usage . . . ; the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible . . . ." (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 91 [255 Cal.Rptr. 670, 767 P.2d 1148], citations omitted.)

We do not read section 667, subdivision (c)(7) to require consecutive sentences, unless section 654 bars multiple punishment, for all current serious felony convictions regardless of when they were committed. The language does not support this interpretation. Section 667, subdivision (c) makes no mention of section 654. The "same occasion[/]same set of operative facts" language is not the language of section 654, which speaks of "[a]n act or omission." Nor is it even the judicial gloss of "intent and objective" (*Neal* v. *State of California*, *supra*, 52 Cal.2d at p. 19) or "indivisible course of conduct" (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905]). (See *People* v. *Latimer* (1993) 5 Cal.4th 1203, 1211 [23 Cal.Rptr.2d 144, 858 P.2d 611].)

Instead, the "same occasion" language is more similar to the language used in section 667.6, requiring consecutive sentences for certain sex offenses. Under section 667.6, subdivision (c), full, separate and consecutive terms may be imposed "whether or not the crimes were committed during a single transaction." Under section 667.6, subdivision (d), full, separate and consecutive terms are required for certain sex offenses "if the crimes involve separate victims or involve the same victim on separate occasions." This latter subdivision shows the Legislature knew how to require consecutive sentences when there were separate victims when it wanted to do so.

In contrast, section 667, subdivision (c)(7) does not mention separate victims. Instead, it speaks only of the "same occasion" and the "same set of operative facts." Under the ordinary meaning of these terms, the three robberies were committed on the "same occasion" and arose from "the same set of operative facts." Accordingly, consecutive sentences were not required under section 667, subdivision (c)(7).

In *Neal* v. *State of California*, *supra*, 55 Cal.2d 11, the Supreme Court stated the application of section 654 to a course of criminal conduct is dependent on the actor's intent and objective. "If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (55 Cal.2d at p. 19.) The question of

whether a defendant could be punished twice for a single act of violence against two victims, however, presented "a different problem." (*Id.* at p. 20.) Greater punishment was permissible due to the defendant's greater culpability. "Section 654 is not '. . . applicable where . . . one act has two results each of which is an act of violence against the person of a separate individual.' " (*Id.* at pp. 20-21.) ▇▇▇ The "same occasion[/]same set of operative facts" conditions address only the timing of the current crimes, not other issues of culpability. These issues are left to the sentencing court's discretion in determining whether consecutive sentences are appropriate. The court's discretion is guided by the criteria set forth in rule 425 of the California Rules of Court. While consecutive sentences were not required under this subdivision, they are still permissible. (*People* v. *Cartwright* (1995) 39 Cal.App.4th 1123, 1141 [46 Cal.Rptr.2d 351].) The concern with crimes committed on different occasions is consistent with the focus of the Three Strikes law—recidivism.

Our analysis does not end here because there is another provision of section 667 that requires consecutive sentences. When a defendant has two strikes, as do both Redman and Newsome, he receives an indeterminate term under section 667, subdivision (e)(2)(A). Section 667, subdivision (e)(2)(B) provides: "The indeterminate term described in subparagraph (A) shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to any indeterminate term described in subparagraph (A) shall not be merged therein but shall commence at the time the person would otherwise have been released from prison."

Our Supreme Court has recently interpreted this language. It noted that section 667, subdivision (e)(2)(B) speaks of both the " '*indeterminate term* described in subparagraph (A)' " and " '*any other term of imprisonment* for which a consecutive term may be imposed by law.' " (*People* v. *Hendrix* (1997) 16 Cal.4th 508, 514 [66 Cal.Rptr.2d 431, 941 P.2d 64], original italics.) The court concluded this subdivision "merely provides that the indeterminate term must be imposed consecutive to any other term, such as a term of enhancement." (*Id.* at p. 515.) It does not require consecutive sentences for each indeterminate term. (*Ibid.*)

Since consecutive sentences were not required for each of the robbery convictions, and since the trial court clearly misunderstood the scope of its discretion in this aspect of sentencing, the case must be remanded for a reconsideration of whether to impose consecutive or concurrent sentences. (See *People* v. *Belmontes, supra,* 34 Cal.3d at p. 348, and fn. 8.)

### B. *Remaining Sentencing Contentions*

Newsome contends the court incorrectly calculated his sentence under the Three Strikes law. First, he claims the court erred in sentencing him to 25 years to life for each felony count. He contends the court was required to impose a single life sentence and then to calculate the minimum term of this sentence under section 667, subdivision (e)(2)(A) as to all counts together rather imposing a life term and applying the three alternatives to determine a minimum term for each count separately. Newsome's reading would result in a significantly shorter sentence. This same argument was made and rejected in *People* v. *Cartwright, supra,* 39 Cal.App.4th 1123, 1141-1143. (Accord, *People* v. *Samuels* (1996) 42 Cal.App.4th 1022, 1028-1029 [50 Cal.Rptr.2d 157].)

■ Second, Newsome argues that enhancements for prior serious felonies are not to be added to a defendant's sentence when he is sentenced under subdivision (e)(2)(A) of section 667. He reasons that including such enhancements would render the inclusion of enhancements under alternative (iii) mere surplusage. The California Supreme Court recently rejected this contention in *People* v. *Dotson* (1997) 16 Cal.4th 547 [66 Cal.Rptr.2d 423, 941 P.2d 56]. The prefatory language of section 667, subdivision (e) provides: "For purposes of subdivisions (b) to (i), inclusive, and in addition to any other enhancement or punishment provisions which may apply, the following shall apply where a defendant has a prior felony conviction:" Interpreting nearly identical language in the Three Strikes initiative (§ 1170.12, subd. (c)), the court held this language "clearly prescribes that terms of enhancement, including the five-year enhancement under section 667(a), be imposed in addition to the indeterminate term." (16 Cal.4th at p. 554.)

Finally, Newsome contends *People* v. *Jones* (1993) 5 Cal.4th 1142 [22 Cal.Rptr.2d 753, 857 P.2d 1163] precludes the use of a prior conviction both as a "strike" and as an enhancement. This contention has been rejected numerous times. (*People* v. *Nobleton* (1995) 38 Cal.App.4th 76, 81-82 [44 Cal.Rptr.2d 611]; *People* v. *Anderson* (1995) 35 Cal.App.4th 587, 594-595 [41 Cal.Rptr.2d 474]; *People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 562-573 [39 Cal.Rptr.2d 374].)

### VI.-VIII.*

. . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 902.

## DISPOSITION

The judgment is vacated and the matter is remanded to the trial court for resentencing so that it may exercise its discretion as to imposing consecutive or concurrent sentences on the robbery convictions and as to whether to strike one or more of defendants' prior serious felony convictions.

Blease, Acting P. J., and Davis, J., concurred.

A petition for a rehearing was denied October 1, 1997.