[No. B112968. Second Dist., Div. Four. Oct. 30, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
MARLIN JONES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

**COUNSEL**

Catherine Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Robert F. Katz and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—Marlin Jones challenges his conviction under Penal Code section 136.1 for dissuading a witness from testifying.[1] In the published part of this opinion, we consider appellant's argument that the jury was improperly instructed that this offense is a general intent crime, and the "same occasion" rule for consecutive sentencing under the "Three Strikes" law. We find no prejudicial error on the former, and no error on the latter. We find no error with respect to the other sentencing issues raised by appellant. We affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

On December 7, 1995, appellant entered Randy Megrdle's residence. Appellant took a checkbook, a .357-caliber revolver, a beeper, two watches, a wallet and a gold chain from the residence. One of the checks taken from Megrdle's apartment was used to purchase a Sega Saturn and other toys at Toys-R-Us. Although Megrdle did not sign the check, it bore his name. Tyla Brown, a cashier at Toys-R-Us, approved the check.

The revolver was returned to Megrdle by his brother Phillip Megrdle who received it from Darrell Conedy. Conedy was a friend of Randy and Phillip Megrdle, and knew appellant.

According to Conedy, appellant tried to sell Conedy a watch, a gun, and a chain that he had taken in a burglary. Appellant was wearing the gold chain. Conedy asked for the gun and appellant gave it to him. Conedy later saw an organizer with Megrdle's checks. Conedy ripped up the checks and disposed of them.

On at least four occasions, appellant called Conedy and said, "Are you going to testify? Don't testify." Conedy asked, "What are you going to do about it?" Appellant replied, "I'll do whatever I have to. Just don't testify, man. I'm telling you, Darrell, I'll do whatever I have to, man." Appellant repeated this four or five times per conversation.

Appellant was charged with burglary (§ 459); forgery (§ 470); intimidation of a witness (§ 136.1, subd. (c)(1)); and grand theft (§ 487, subd. (d)). Two prior serious or violent felonies were alleged. One enhancement for a prior prison term under section 667.5, subdivision (b) was also alleged.

Appellant presented a defense that Conedy and Brown committed the robbery. Conedy's former housemate testified that when Conedy lived with

---

[1]All further statutory citations are to this code.

her, her checks were stolen from her purse. Brown's apartment manager testified that she thought Conedy had been living with Brown. Conedy's friend testified that he and Brown would swim together at Conedy's house. Both Conedy and Brown denied spending time together. A handwriting expert testified that the handwriting on Megrdle's check cashed at Toys-R-Us resembled Brown's more than appellant's.

The jury convicted appellant on all counts. Appellant waived jury trial on the priors. The court found the priors to be true. The court sentenced appellant to a total of 81 years to life. On the burglary count, the court imposed a twenty-five-year-to-life sentence plus one year for the section 667.5 enhancement and four years for the section 667, subdivision (a)(1) serious felony enhancement. The court imposed a consecutive 25-year-to-life sentence for the forgery count and a third consecutive 25-year-to-life sentence for the dissuading a witness count. Pursuant to section 654, the court stayed a 25-year-to-life sentence for grand theft of a firearm. Appellant filed a timely notice of appeal.

## DISCUSSION

### I

■ Appellant argues, and the Attorney General concedes, that the court erred in instructing the jury that intimidation of a victim in violation of section 136.1 is a general intent crime. The remaining issue is whether the instructional error is harmless under the standard of *Chapman* v. *California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]. (*People* v. *Brenner* (1992) 5 Cal.App.4th 335, 339 [7 Cal.Rptr.2d 260].)

Two cases have considered this question. In *People* v. *Ford* (1983) 145 Cal.App.3d 985, 989 [193 Cal.Rptr. 684] the trial court concluded the meaning of the statement, " 'You punk mother f[——], we'll get you, you've got kids . . . .' " was ambiguous. It could have been either a statement of revenge or of an intent to dissuade a witness from testifying. (*Ibid.*)

In contrast, in *People* v. *Brenner, supra,* 5 Cal.App.4th 335, 339, a witness was told " 'if I called the police, he would kill me.' " That statement is unambiguous. (*Ibid.*) As long as the jury believed appellant made the statement, the words of the statement itself required the jury to believe the appellant intended to prevent the witness from calling the police. (*Id.* at pp. 339-340.) In *Brenner* the failure to give a specific intent instruction was harmless while in *Ford* it was prejudicial. (*Id.* at p. 340; *People* v. *Ford, supra,* 145 Cal.App.3d at p. 990; see also *People* v. *Bolin* (1998) 18 Cal.4th

297 [75 Cal.Rptr.2d 412, 956 P.2d 374] [even ambiguous statement may be basis for violation of terrorist threat statute, section 422].)

In this case, appellant's repeated statement was, "I'll do whatever I have to do. Just don't testify, man. I'm telling you, Darrell, I'll do whatever I have to, man." In his opening brief, appellant maintains that there are multiple interpretations of this statement including innocent ones, such as that appellant would defend himself in a courtroom.

Appellant's argument is not persuasive. He demonstrated an explicit intent to dissuade Conedy from testifying when he said, "[D]on't testify, man." There is nothing ambiguous about that statement. The words unequivocally show appellant was threatening Conedy with some kind of reprisal if he persisted in his intention to testify. Although, appellant did not spell out exactly what consequences Conedy would suffer if he testified, the intent to dissuade is clear. The court's error was harmless.

## II

■ Appellant next maintains that the trial court incorrectly thought it was required to sentence him consecutively based on his convictions for burglary, forgery of a check, and dissuading a witness from testifying. According to appellant, the court had discretion under section 667, subdivision (c)(6) and (c)(7)[2] or subdivision (e)(2)(B)[3] to sentence him either to concurrent or consecutive sentences. Appellant argues burglary was his "original" crime and the other two offenses were "in furtherance of the objective of the burglary."

Section 667, subdivision (c)(6) and (c)(7), and subdivision (e)(2)(B), mandate consecutive sentencing only when the current felony convictions were "not committed on the same occasion, and do not arise from the same

[2]Section 667, subdivision (c) provides: "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d), the court shall adhere to each of the following: [¶] . . . [¶] (6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e). [¶] (7) If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law."

[3]Section 667, subdivision (e)(2)(B) provides: "The indeterminate term described in subparagraph (A) shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to any indeterminate term described in subparagraph (A) shall not be merged therein but shall commence at the time the person would otherwise have been released from prison."

set of operative facts, . . ." (*People* v. *Hendrix* (1997) 16 Cal.4th 508, 513-515 [66 Cal.Rptr.2d 431, 941 P.2d 64].) Felonies were held to have been committed on the same occasion when a defendant and his confederate struggled to grab the purses of two women who were walking down a street (*People* v. *Bell* (1998) 61 Cal.App.4th 282, 294 [71 Cal.Rptr.2d 415]) and when a defendant robbed three occupants of a house at gunpoint. (*People* v. *Newsome* (1997) 57 Cal.App.4th 902, 909 [67 Cal.Rptr.2d 438].) In contrast, felonies were held not to have been committed on the same occasion when a defendant threatened a witness at two different times in two different locations. (*People* v. *Newsome, supra,* 57 Cal.App.4th at p. 911.)

Our Supreme Court recently has considered the meaning of the phrase "same occasion." In *People* v. *Deloza* (1998) 18 Cal.4th 585, 588 [76 Cal.Rptr.2d 255, 957 P.2d 945], the appellant entered a furniture store with an armed companion who pointed a weapon at a salesperson. The appellant took money from a cash register and from a person's wallet. He also took a customer's purse. (*Ibid.*) The confederate took money from another person's wallet. Appellant was convicted of four counts of second degree robbery. (*Ibid.*) The court held that these acts were committed on the "same occasion." (*Id.* at p. 594.)

In reaching this conclusion the court rejected an argument that the test under section 654 for the same act or omission also governs the question of whether consecutive sentences are mandatory under section 667, subdivision (c)(6) and subdivision (c)(7). (*People* v. *Deloza, supra,* 18 Cal.4th at p. 594.) The court also rejected an argument that "same occasion" refers to the definition of "separate occasion[]" in section 667.6, subdivision (d). (18 Cal.4th at p. 599.) "The phrase 'committed on the same occasion' is commonly understood to refer to at least a close temporal and spatial proximity between two events, although it may involve other factors as well." (*Id.* at p. 594.)

In this case appellant's offenses were not committed on the same occasion, nor did they arise from the same operative facts. The burglary, forgery, and threatening phone calls were neither temporally nor spatially proximate. Instead, they occurred at different times and locations. Nor were the offenses based on the same operative facts. The burglary was based on breaking and entering the residence, the forgery based on cashing the check at Toys-R-Us, and the dissuading a witness on the numerous threatening phone calls appellant made to Conedy. Appellant implicitly recognizes this as he argues the latter two offenses were "in furtherance" of the first. But there is no exception to mandatory consecutive sentences when one offense is in furtherance of another.

III, IV*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.

---

*See footnote, *ante*, page 724.