Filed 10/24/13  P. v. Taylor CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Appellant.<br><br>v.<br><br>DARRYL JEWEL TAYLOR,<br><br>Defendant and Appellant. | F064458<br><br>(Super. Ct. No. VCF256404)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Gary Paden, Judge.

Kendall Simsarian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna, Tiffany J. Gates, and Charity S. Whitney, Deputy Attorneys General, for Plaintiff and Appellant.

-ooOoo-

---

\*        Before Cornell, Acting P.J., Kane, J. and Franson, J.

## INTRODUCTION

On October 19, 2011, appellant, Darryl Jewel Taylor, was charged in an information with three felonies: making a criminal threat (Pen. Code, § 422, count 1),[1] assault with a deadly weapon (§ 245, subd. (a)(1), count 2), and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a), count 3). He was also charged with two misdemeanors: possession of a smoking device (Health & Saf. Code, § 11364, subd. (a), count 4) and being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a), count 5). The information further alleged use of a deadly or dangerous weapon in the commission of count 1 (§ 12022, subd. (b)(1)), a prior serious felony conviction within the meaning of the three strikes law (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)), and a prior serious felony conviction (§ 667, subd. (a)(1)).

On December 15, 2011, a jury found Taylor guilty of count 3 and acquitted him of count 2. The jury found Taylor guilty of the lesser included offense in count 1 of an attempt to make a criminal threat. The jury also convicted Taylor of the misdemeanor drug offenses and found Taylor used a dangerous or deadly weapon. In a bifurcated proceeding, Taylor waived his rights and admitted the prior serious felony conviction and the three strikes allegation.

On February 23, 2012, the trial court sentenced Taylor on the attempted criminal threat conviction to one year, doubled to two years pursuant to the three strikes law, plus consecutive terms of one year for the weapon enhancement and five years for the prior serious felony conviction. Taylor's total prison term is eight years. The court imposed a concurrent sentence of four years on count 3. The court awarded Taylor 291 days of presentence custody credit, consisting of actual custody credits of 195 days and conduct credits of 96 days.

---

[1]     Unless otherwise noted, statutory references are to the Penal Code.

Taylor contends there was not substantial evidence to support his conviction for attempting to make a criminal threat. The People contend in a cross-appeal that the trial court improperly imposed an unauthorized sentence by making appellant's sentence on the drug offense concurrent to the attempted criminal threat conviction. The People argue that a consecutive sentence for possession of methamphetamine is mandatory under the three strikes law. As we explain below, we reject both contentions.

## FACTS

Teri Davis dated Taylor for a year and a half until their relationship ended in January 2011.[2] Beginning in August, Davis briefly dated Steven Clark. Davis received a phone call from Taylor on August 8. Taylor was upset with Davis because he learned Davis was dating someone else. Taylor told Davis he would kill the person Davis was dating if he went back to Davis's house. Although Taylor did not know Clark's identity during the first phone call, he told Davis that when he found out his identity, he would murder him.

Davis received another call from Taylor the next day at 3:30 a.m. Davis could tell from Taylor's tone that he was upset. This time, Taylor told Davis he knew she was dating Clark and if Clark ever returned to Davis's house, Taylor would kill them both.

On August 13th, someone called 911 requesting police assistance because he "just almost got stabbed."[3] The caller told the dispatcher that a man named Darryl Taylor swung a knife at his face and then rode away on a bicycle. The caller identified himself as Clark. Porterville police officers were immediately dispatched as Clark was talking to the 911 operator.

---

[2]     All dates will hereafter refer to the year 2011.

[3]     The recording of the 911 conversation was admitted as People's exhibit "1-A" and played to the jury during trial.

3

Officer Tyson Tashiro was dispatched at 2:15 a.m. on August 13th to a residence in Porterville on North Fourth Street where he contacted Clark. Clark told Tashiro that Taylor came out of the bushes, attacked him with a sharp, shiny knife he held in his left hand, and told Clark, "I'm going to fuckin[g] kill you." Clark told Tashiro that Taylor approached him rapidly and swung at Clark with his empty right hand.

Clark explained to Tashiro that he took several steps back and defensively swung at Taylor who stumbled back slightly. Taylor then swung at Clark toward his face with the left hand in which he held the knife. Taylor then took a long stabbing device from his right pocket. After several failed attempts of attacking Clark, Taylor rode away on a bicycle. Clark told Tashiro that he was afraid for his life.

Officer Michael Benas was dispatched to Davis's residence at 2:19 a.m. on August 13th. As Benas approached Davis's residence, he saw someone dive head first onto a nearby porch on North Third Street. The location was just north of the address given to Benas by the dispatcher. Benas stopped his vehicle and found Taylor hiding behind a bush near the porch. Benas detained Taylor, searched him, and found a folding pocket knife, a knife sharpener, a glass smoking pipe and a small baggie of crystalline substance that appeared to be methamphetamine. The substance was .32 grams of methamphetamine, a usable amount. Tashiro contacted Taylor at the police station. Taylor appeared to be under the influence of a controlled substance. Taylor's blood sample tested positive for the presence of methamphetamine.

At trial, Clark was uncooperative and initially stated that he had no recollection of the events on August 13th. He also did not remember making the 911 call.

Clark later testified that he and Taylor had exchanged messages on Facebook in the days leading up to the attack. Defense counsel successfully admitted into evidence Taylor's Facebook page and an entry from Clark that counsel described as threatening to

4

Taylor.[4] There were entries from June and July, as well as August 9th and 12th. Clark did not go as far as to describe the exchanges from either party as threats, but acknowledged they contained profane language and insults. Clark believed this was the reason Taylor attacked him. Clark wrote to Taylor that he was not "scared of your tweaking punk ass," and "I'm not scared of you." Although Clark wrote these comments to Taylor, Clark said that he was afraid of Taylor.

Clark explained that he recalled walking up to Davis's house and Taylor coming out of the bushes, swinging a knife at him. Taylor was close enough to Clark's face to scare him. Clark acknowledged it was his voice on the recording of the 911 call. Clark also stated he was uncooperative during direct examination because he was afraid of Taylor. Clark explained that when he drove to Davis's house after work on the day of the attack, a man named Danny was in the car with him. Clark could not recall where Danny was when Taylor attacked him, but he thought Danny was either inside the house already or was entering the house.

## DISCUSSION

*Sufficiency of the Evidence*

Taylor contends there was insufficient evidence adduced at trial to show an attempted criminal threat. We disagree.

In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is the same in cases in which the prosecution relies mainly

---

[4] These exhibits were defense exhibits "C" and "D" and were not made part of the record on appeal.

5

on circumstantial evidence. It is the jury, not the appellate court, which must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

In reviewing a challenge to the sufficiency of the evidence, appellate courts do not determine the facts. We examine the record as a whole in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 [questioned on another ground in *People v. Rundle* (2008) 43 Cal.4th 76]; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient for a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

An appellate court must accept logical inferences that the jury might have drawn from circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) Before setting aside the judgment of the trial court for insufficiency of the evidence, it must clearly appear that there was no hypothesis whatever upon which there was substantial evidence to support the verdict. (*People v. Conners* (2008) 168 Cal.App.4th 443, 453; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

As Taylor acknowledges, making an attempted criminal threat is an offense. For a criminal threat to be an attempted crime, the victim need not be in fear. (*People v. Toledo* (2001) 26 Cal.4th 221, 230-232 (*Toledo*).) A "defendant can be found to have committed the crime of attempted criminal threat only if he or she acts with the specific intent to make the very kind of threat—that is, … 'on its face and in the circumstances in

6

which it is made so unequivocal, unconditional, immediate and specific as to the person threatened as to convey a gravity of purpose and imminent prospect of execution'" applicable to section 422. (*Toledo*, at p. 232.)

The angry exchanges between Taylor and Clark dated back to June and July. Taylor's threatening phone calls to Davis occurred on the 8th and 9th of August. Taylor and Clark exchanged angry Facebook entries with each other on August 9th and 12th, immediately prior to the incident on August 13th. Although the jury acquitted Taylor of assault with a deadly weapon, it could have found that Taylor still uttered the threat "to fuckin[g] kill" Clark while holding a knife.[5]

Given the animosity between Clark and Taylor, the jury in the factual context of this case could find that Taylor's threat to Clark was unequivocal, unconditional, immediate, and with the intent to convey gravity of purpose and imminent prospect of execution even if Clark did not fear Taylor or believe Taylor was going to actually attack him. We find that there is substantial evidence to support Taylor's conviction for attempting a criminal threat.

### Three Strikes Sentence

The People filed a cross-appeal contending the three strikes law mandates that Taylor's sentence for possession of methamphetamine had to be a consecutive rather than a concurrent sentence. The People argue that the offense of attempting a criminal threat had a separate objective and purpose from possession of methamphetamine, occurred on a different occasion, and did not arise from the same set of operative facts. The People contend the trial court erred in sentencing Taylor concurrently on the drug possession count and for failing to state its reasons for imposing its sentence. The People further

---

[5]  The jury found true the allegation that Taylor personally used a knife during the commission of count 1.

7

request that this court order a consecutive sentence on both felony counts pursuant to section 1260. We reject these contentions.

At the sentencing hearing, the prosecutor argued that consecutive sentencing was mandated by section 667, subdivision (c)(6). The prosecutor asked the court to impose an eight month term on count 3, double it pursuant to the three strikes law, and make the sentence consecutive to count 1. The court explained that it intended to impose the strike and the prior serious felony enhancement. The court described the sentence of eight years that it was imposing as "somewhat harsh," but noted its hands were tied by the five-year prior serious felony enhancement. The court rejected the prosecutor's argument that the three strikes law mandated consecutive sentencing in this case. The court imposed the two-year midterm on count 3, doubled it pursuant to the three strikes law, and ordered that it be served concurrently with the rest of Taylor's sentence.

Section 667, subdivision (c)(6) mandates consecutive sentencing only when the current felony offenses were not committed on the same occasion *and* did not arise from the same set of operative facts.[6] (*People v. Hendrix* (1997) 16 Cal.4th 508, 513-514; *People v. Jones* (1998) 67 Cal.App.4th 724, 728-729.) The analysis employed under section 654 is irrelevant to section 667, subdivision (c)(6) and (c)(7). (*People v. Deloza* (1998) 18 Cal.4th 585, 593-595 (*Deloza*).) To determine whether the offenses occurred on the same occasion and did not arise from the same operative set of facts, courts should apply the ordinary, commonly understood meaning of these terms to the facts. Offenses occurring on the same occasion require a close temporal and spatial proximity. (*People*

---

[6] Section 667, subdivision (c)(6) provides: "If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)."

8

*v. Lawrence* (2000) 24 Cal.4th 219, 226, 229-232; *Deloza, supra*, 18 Cal.4th at pp. 594-595.)

The court in *People v. Hall* (1998) 67 Cal.App.4th 128 (*Hall*), explained the following process courts should follow in analyzing whether or not a consecutive sentence is mandatory under the three strikes law:

> "In Three Strikes cases, the court reviews the facts established during trial as well as those proffered at sentencing, and based on its assessment of those facts, it decides whether the current felonies occurred 'on the same occasion' and arose 'from the same set of operative facts.'

> "If following further hearing, there still is no evidence from which the trial court can determine that the crimes occurred 'on the same occasion' *and* arose 'from the same set of operative facts' the court is not required to impose consecutive terms. In that situation, the trial court must exercise its discretion to impose concurrent or consecutive terms. The law deprives the trial court of discretion and requires consecutive sentencing only if the current crimes arose on different occasions and out of different sets of operative facts. It is of no import that the record fails to reveal whether or not the offenses occurred 'on the same occasion' if the evidence supports the court's determination that the offenses arose 'from the same set of operative facts.' For the same reason, if the offenses occurred 'on the same occasion,' it does not matter whether there is evidence that they did or did not arise from the same set of operative facts.' Under these circumstances, the court retains *discretion* under ordinary sentencing principles to decide whether to impose consecutive or concurrent terms.'" (*Hall, supra*, 67 Cal.App.4th at pp. 138-139.)

The People argue the sentence that should run consecutively in this case is the drug possession offense. In *People v. Bland* (1995) 10 Cal.4th 991 (*Bland*), the defendant was convicted of a drug offense and an enhancement for being armed with a firearm during the commission of a felony. The question the *Bland* court confronted was whether a defendant convicted of a possessory drug offense was subject to the arming enhancement when the defendant possessed both the firearm and the drugs, kept them together, but was not present when the police seized them from his home. The *Bland* court held that the enhancement applied because possession of drugs is "a 'continuing'

9

offense … that extends through time." (*Id.* at pp. 995, 999; also see *People v. Delgadillo* (2005) 132 Cal.App.4th 1570, 1575 [manufacture of methamphetamine is a continuing crime that extends through time and is not limited to a discrete event].)

In their briefs, the parties agree that Taylor likely possessed the drugs prior to committing the attempted criminal threat. Implicit in this factual agreement is that Taylor continued to possess drugs while committing the criminal threat and until his arrest. If this is so, then Taylor committed both offenses on the same occasion because the drug possession was a continuing offense that was occurring as he made the attempted criminal threat. (*Bland*, *supra*, 10 Cal.4th at pp. 995, 999.) The mandatory sentencing provisions of the three strikes law do not apply even if the two offenses did not arise from the same set of operative facts. (*Hall*, *supra*, 67 Cal.App.4th at pp. 138-139.)

During oral argument, the People argued the trial court failed to make a factual finding concerning whether the two offenses occurred on the same occasion and that imposition of the consecutive sentence for drug possession was mandatory under the three strikes law. When asked whether there were any facts from which this court or the trial court could infer that appellant acquired methamphetamine *after* the commission of the attempted criminal threat, the People reluctantly conceded that there were none.

It is clear that Taylor was arrested very shortly after the incident with Clark. Officer Tashiro was dispatched to Davis's residence at 2:15 a.m. as Clark was talking to the 911 operator. Officer Benas was dispatched to the same location four minutes later. On his way to Davis's residence, Benas encountered Taylor one street over and just north of Davis's residence diving for cover in an attempt not to be spotted. Taylor had left the scene of the incident only minutes earlier. Officers not only found methamphetamine on Taylor, but narcotics paraphernalia. Taylor was also under the influence of drugs when he was arrested

After reviewing the evidence available to the trial court, we conclude the only reasonable inferences that can be drawn from the instant record support the theory that appellant possessed methamphetamine as he committed the attempted criminal threat. Taylor had virtually no time to acquire methamphetamine after making the attempted criminal threat. Drug possession is a continuing offense. (*Bland*, *supra*, 10 Cal.4th at pp. 995, 999.) The two offenses are in close spatial and temporal proximity and occurred on the same occasion even if they did not arise from the same set of operative facts. Therefore, the trial court was not mandated by section 667, subdivision (c)(6) to sentence Taylor consecutively on counts 1 and 3.

Because the trial court was only mandated to state its reasons for imposing a discretionary consecutive prison term (Cal. Rules of Court, rule 4.406(b)(5) & (b)(6); *Hall*, *supra*, 67 Cal.App.4th at p. 138) and not for imposing a concurrent sentence (Cal. Rules of Court, rule 4.406(b); *People v. Lepe* (1987) 195 Cal.App.3d 1347, 1350), the trial court did not err in failing to state its reasons for imposing a concurrent sentence. The record is clear that the trial court did not consider Taylor's offenses worthy of the discretionary imposition of consecutive prison terms. We hold the trial court did not abuse its sentencing discretion.[7]

## DISPOSITION

The judgment is affirmed.

---

[7] The trial court stated that Taylor's sentence of eight years was "somewhat harsh." Had we found the trial court was mandated to impose a consecutive sentence on count 3, we would have remanded the case for resentencing by the trial court for it to fashion a sentence it considered just and also would have declined the People's invitation to impose the consecutive sentence ourselves pursuant to section 1260. (See *Hall*, *supra*, 67 Cal.App.4th at p. 141.)

11