Filed 4/25/22

## CERTIFIED FOR PARTIAL PUBLICATION<u>*</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTONIO VALLE SERRANO,<br><br>    Defendant and Appellant. | F080692<br><br>(Kern Super. Ct. No. DF014596A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. David R. Zulfa, Judge.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

    **\*** Pursuant to California Rules of Court, rules 81105(b) and 8.1110, the opinion is certified for publication with the exception of part III. of the Discussion.

Defendant Antonio Valle Serrano was convicted by jury trial of dissuasion of a victim by threat of force, criminal threats, simple assault, and infliction of corporal injury resulting in a traumatic condition on a victim. On appeal, defendant contends (1) the conviction for dissuasion of a victim must be reversed because the trial court failed to properly instruct the jury on the malice element of the offense, and (2) the conviction for simple assault must be reversed because it is a lesser included offense of infliction of corporal injury. We reverse the conviction for simple assault, affirm the remaining convictions, and remand for resentencing.

## PROCEDURAL SUMMARY

On September 16, 2019, the Kern County District Attorney charged defendant, by information, with dissuading a victim by threat of force (Pen. Code, § 136.1, subd. (c)(1);[1] count 1), making criminal threats (§ 422; counts 2 & 5), committing assault with a deadly weapon (§ 245, subd. (a)(2); count 3), and inflicting corporal injury resulting in a traumatic condition on a victim (§ 273.5, subd. (a); count 4). The information further alleged defendant personally used a firearm during the commission of each of those offenses (§ 12022.5, subd. (a)).

On September 23, 2019, defendant pled not guilty to all counts and denied all special allegations.

On November 21, 2019, trial commenced.

On December 5, 2019, the trial court dismissed count 5 on the prosecution's motion.

On December 6, 2019, a jury found defendant guilty of counts 1, 2, and 4. The jury found defendant not guilty of count 3 (assault with a deadly weapon) but guilty of the lesser included offense of simple assault (§ 240). The jury also found all firearm allegations not true.

_____

[1] All statutory references are to the Penal Code unless otherwise noted.

2.

On January 28, 2020, the trial court sentenced defendant to the upper term of four years on count 4 and a concurrent term of three years on count 1. The court further sentenced defendant to two years on count 2, stayed pursuant to section 654, and 180 days on count 3, stayed pursuant to section 654.

That same day, January 28, 2020, defendant timely filed a notice of appeal.

## FACTS

A.V. and defendant were in a dating relationship and had been living together for approximately one year. On August 23, 2019, while at home, defendant and A.V. got into an argument. Defendant had been drinking alcohol and insisted A.V. take him to the store to buy more alcohol. When A.V. refused, defendant became upset and left the house.

After defendant left the house, A.V. went outside to close the garage door. Defendant returned from his pickup truck and confronted A.V. The confrontation became physical. Defendant hit A.V on the head and pushed her to the ground. He put his foot on her face to keep her from getting up. While on the ground, A.V.'s left hand and keys were in her pocket. Defendant tried to pull her hand away and take her keys from her. As a result of this altercation, A.V. suffered abrasions to her face, injuries to her arm and chest, bruising to the left side of her body, and injuries to both hands, including scrapes and bleeding to the back of her left hand and fingers.

A.V. testified that, during the conflict, defendant pulled a small gun from his pocket, pointed it at her head, and told her "not to dare call the police because [she] would be sorry about it." A.V. became frightened and thought defendant might kill her.

A.V.'s daughter was at home at the time of the incident. When defendant became aggressive, A.V. started yelling and calling for her daughter to help her. The daughter, who had been sleeping, was awakened by A.V.'s calls. She went outside and saw her mom crying on the floor and defendant by the door of his truck. Defendant, seeing the

3.

daughter, got in his truck, and left "in a hurry." The daughter saw bruises and scratches on A.V. At A.V.'s request, she called the police.

An unidentified witness also called 911 to report the crime. An audio recording of the call was entered into evidence and played for the jury. The caller reported the assailant "was just hitting [A.V.]. He was screaming and he tried to drown it out with his music."

In response to those calls, Delano Police Officer Contreras was dispatched to A.V.'s home. Officer Contreras investigated A.V.'s complaint, took her statement, and photographed her injuries. A.V. appeared distraught and as if she had been crying. Officer Contreras offered A.V. an emergency restraining order and she accepted.

Defendant returned to the home the next evening, August 24, 2019. He did not appear to have a weapon with him. A.V. told him to leave, but he refused saying it was also his house. She told defendant she had contacted the police, but she did not think he believed her. He repeated his warning to her that if she called the police, she knew what would happen.

That same evening, Officer Contreras was again summoned to the home.[2] She established contact with defendant and conducted a pat down search of his person, but she did not find a firearm or any ammunition on him. She requested that A.V. search the residence and contact her if a firearm was found. A.V. never reported finding a firearm.

## DISCUSSION

### I.    Jury Instructional Errors Were Not Prejudicial

#### A.    *The Trial Court Erred by Failing to Properly Instruct the Jury on a Required Element of Section 136.1, Subdivision (c)(1)*

Defendant contends the trial court erred by failing to properly instruct the jury on the charge of dissuading a victim by threat of force. Specifically, he contends the court

---

[2] Officer Contreras had not served a copy of the emergency protective order on defendant prior to his return to the house that evening.

4.

erred by failing to instruct the jury that commission of the offense requires a defendant to act "knowingly and maliciously" (§ 136.1, subd. (c)) and by failing to provide the jury with the statutory definition of "malice" (§ 136). He contends his state and federal due process rights and Sixth Amendment right to a jury trial were violated as a result. We agree the trial court erred by failing to properly instruct the jury on the malice element of the offense.

### 1. Law

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense. [Citation.] [Failure to do so] is, indeed, very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee. [Citations.] All criminal defendants have the right to 'a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' " (*People v. Merritt* (2017) 2 Cal.5th 819, 824 (*Merritt*).)

"Even absent a request, the trial court must instruct on the general principles of law applicable to the case. [Citation.] The general principles of law governing a case are those that are commonly connected with the facts adduced at trial and that are necessary for the jury's understanding of the case." (*People v. Young* (2005) 34 Cal.4th 1149, 1200 (*Young*).)

"The independent or de novo standard of review is applicable in assessing whether [jury] instructions correctly state the law." (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "In reviewing a claim of error in jury instructions in a criminal case, this court must first consider the jury instructions as a whole to determine whether error has been committed. [Citations.] We may not judge a single jury instruction in artificial isolation, but must view it in the context of the charge and the entire trial record." (*People v. Moore* (1996) 44 Cal.App.4th 1323, 1330–1331.)

The crime of dissuading a victim by threat of force is set forth in section 136.1. Subdivision (b)(1) of that section defines the basic crime, and subdivision (c)(1) defines an aggravated form of the crime committed knowingly and maliciously. These subdivisions read, in pertinent part, as follows:

> "(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime … from doing any of the following is guilty of a public offense … [¶] (1) Making any report of that victimization to any peace officer or state or local law enforcement officer .…
>
> "(c) Every person doing any of the acts described in subdivision (a) or (b) *knowingly and maliciously* under any one or more of the following circumstances, is guilty of a felony punishable by imprisonment in the state prison for two, three, or four years under any of the following circumstances: [¶] (1) Where the act is accompanied by force or by an express or implied threat of force or violence, upon a witness or victim or any third person .…" (§ 136.1, subds. (b)(1) & (c)(1), italics added.)

A violation of subdivision (b)(1) of section 136.1, " 'does not require that the defendant act knowingly and maliciously.' [Citations.] Instead, to 'prove a violation of section 136.1, subdivision (b)(1), the prosecution must show (1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of their victimization to any peace officer or other designated officials.' [Citation.] The prosecution must also prove the defendant specifically intended that his acts would prevent or dissuade the victim or witness from making the report." (*People v. Cook* (2021) 59 Cal.App.5th 586, 590.)

"Under section 136.1, subdivision (c), a violation of subdivision (b)(1) is subject to heightened penalties if the defendant acted 'knowingly and maliciously' and committed the offense under additional specified circumstances." (*People v. Cook*, *supra*, 59 Cal.App.5th at p. 590.) As such, "knowingly and maliciously" are mens rea elements of the offense and a defendant is entitled to instructions that properly advise the

6.

jury on those elements. (*People v. Hallock* (1989) 208 Cal.App.3d 595, 610; *Merritt*, *supra*, 2 Cal.5th at p. 824.)

Section 136 defines "malice" for purposes of section 136.1, as follows: " 'Malice' means an intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." (§ 136, subd. (1).)

### 2. Instructions Given

The trial court instructed the jury with CALCRIM No. 252. That instruction read, in part: "The following crimes require a specific intent or mental state: Dissuading a Witness as alleged in Count One and Criminal Threats as alleged in Count Two. For you to find a person guilty of these crimes, that person must not only intentionally commit the prohibited act, but must do so with a specific intent and/or mental state. The act and the specific intent and/or mental state required are explained in the instruction for each crime." The specific intent or mental state required for counts one and two were not set forth in CALCRIM No. 252.

Regarding the basic crime defined by subdivision (b)(1) of section 136.1, the trial court instructed the jury with CALCRIM No. 2622 which provided, in relevant part: "The defendant is charged in Count One with intimidating a witness in violation of Penal Code section 136.1. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant prevented or discouraged [A.V.] from making a report that he/she was a victim of a crime to the police; [¶] 2. [A.V.] was a crime victim; [¶] AND [¶] 3. The defendant knew he was preventing or discouraging [A.V.] from reporting her victimization and intended to do so." The definition of "maliciously" was stricken from this jury instruction by a handwritten line. Because malice is not an element of the crime described in subdivision (b)(1) of section 136.1, the trial court was correct to strike the definition of "maliciously" from the jury instruction.

Conversely, malice is an element of the aggravated form of the crime defined by subdivision (c)(1) of section 136.1. Regarding this charge, the trial court instructed the

7.

jury using a modified version of CALCRIM No. 2623. The modified instruction read: "If you find the defendant guilty of intimidating a witness, you must then decide whether the People have proved the additional allegation that the defendant used or threatened to use force. [¶] To prove this allegation, the People must prove that: [¶] The defendant used force or threatened, either directly or indirectly, to use force or violence on the person or property of a victim. [¶] The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved." In so instructing the jury, the trial court deviated from CALCRIM No. 2623 by omitting the malice element and definition of malice. Specifically, the trial court did not instruct the jury that, to find defendant guilty of subdivision (c)(1) of section 136.1, it must find "[t]he defendant acted maliciously," and that "[a] person acts *maliciously* when he or she unlawfully intends to annoy, harm, or injure someone else in any way, or intends to interfere in any way with the orderly administration of justice." (See CALCRIM No. 2623; §§ 136, 136.1.)

### 3. Analysis

#### a. *Knowledge Element*

The People contend the trial court's instruction satisfied the knowledge element required for a violation of section 136.1, subdivision (c)(1) because the jury was instructed (in connection with the basic form of the crime under subdivision (b)(1)) that, to convict defendant of the charge, it must find, among other things, "[t]he defendant knew he was preventing or discouraging [A.V.] from reporting her victimization and intended to do so." We agree.

"The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of [the] code. It does not require any knowledge of the unlawfulness of such act or omission." (§ 7, subd. (5).) The trial court's instruction on this element was included in CALCRIM No. 2622, a jury instruction that was designed to include a knowledge element. (*People v. Torres* (2011)

8.

198 Cal.App.4th 1131, 1142, fn. 7 [noting CALCRIM No. 2622 includes a knowledge element].)  As applied to the facts in the case before us, the term "knowingly" only required defendant's knowledge he was dissuading A.V. from making a report to law enforcement.  Thus, we agree with the People that the instructions given by the trial court adequately instructed the jury on the knowledge element required for a conviction under section 136.1, subdivision (c).

### b. *Malice Element and Definition*

However, the trial court's instructions did not satisfy the need to instruct the jury on malice.  Malice is a separate element that must be proven to obtain a conviction under section 136.1, subdivision (c)(1).  (*People v. Hallock*, *supra*, 208 Cal.App.3d at p. 610.)  Malice is defined as the "intent to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." (§ 136.)

Citing *People v. Wahidi* (2013) 222 Cal.App.4th 802, the People argue the trial court's instruction that the jury must find "defendant knew he was preventing or discouraging [A.V.] from reporting her victimization and intended to do so" was sufficient to instruct the jury on the element of malice.  We disagree.

In *Wahidi*, the court determined the malice element was met where the defendant intended to prevent a witness from testifying in court because such an act "always interferes in some manner 'with the orderly administration of justice ….' " (*People v. Wahidi*, *supra*, 222 Cal.App.4th at p. 807.)  The People argue the same is true where a defendant prevents a victim from reporting a crime – it interferes with the orderly administration of justice.  However, the issue in *Wahidi* was not whether the jury was properly instructed on the elements of the crime.  The issue was whether substantial evidence existed to support the jury's finding that the malice element was met.  (*Id*. at p. 809.)  The *Wahidi* court determined the act of preventing a witness from testifying

9.

was, itself, substantial evidence of an intent to interfere with the orderly administration of justice. (*Id*. at pp. 807–809.)

Here, the situation is different from that in *Wahidi*. In determining whether the jury was properly charged, we are not concerned with whether defendant's statements to A.V. constituted *substantial evidence* of malice. Rather, we are concerned with whether the jury was properly charged that, to convict defendant, they needed to find, beyond a reasonable doubt, defendant acted with malice.

Removing an element from the jury's consideration is tantamount to a directed finding on the element and is prohibited. (*People v. Flood* (1998) 18 Cal.4th 470, 491 ["The prohibition against directed verdicts for the prosecution extends to instructions that effectively prevent the jury from finding that the prosecution failed to prove a particular element of the crime beyond a reasonable doubt."].) Consequently, we conclude the trial court erred by failing to instruct the jury that a finding of malice was necessary for a conviction under section 136.1, subdivision (c).[3] Moreover, because the term "malice" has a special definition for purposes of section 136.1 (§ 136), the trial court erred by failing to define it for the jury. (See *People v. Roberge* (2003) 29 Cal.4th 979, 988 [trial court has an obligation to instruct whenever a statutory term "has a technical meaning peculiar to the law or an area of law"].)

## B.     *The Trial Court's Errors Were Harmless Beyond a Reasonable Doubt*

Having determined the failure to instruct the jury on the malice element and definition were errors, we now consider whether the errors were prejudicial.

---

[3] The Use Notes to CALCRIM No. 2623 are consistent with this opinion. They provide, in relevant part: "If the court has given the malice element in CALCRIM No. 2622, the court may delete it here. *If the court has not already given this element and the defendant is charged under subdivision (c), the court must give the bracketed element requiring malice here.*" (Use Note to Judicial Council of Cal., Crim. Jury Instns. (2d ed. 2021) CALCRIM No. 2623, p. 566, italics added.)

Defendant contends the trial court's errors were prejudicial because the evidence regarding his alleged threat to A.V. was not "overwhelming," there was doubt as to the meaning of his alleged threat, and it is possible the jury, having rejected the allegations defendant had a firearm, convicted him of dissuading a victim based on the unidentified witness's 911 call to police. Defendant argues he was further prejudiced by the errors because the jury could not appropriately apply the instruction on voluntary intoxication in deciding whether he acted with the required specific intent for the charge. We reject defendant's contentions and conclude the errors were harmless.

### 1. Law

" '[T]he omission of one or more elements of a charged offense … is amenable to review for harmless error under the state and federal Constitutions ….' ([*People v.*] *Mil* [2012] 53 Cal.4th [400,] 415 [*Mil*].) 'A trial court's failure to instruct the jury on all of the essential elements of the charged offense is reviewed for harmless error according to the standard set out in *Chapman v. California* (1967) 386 U.S. 18, 24 … (*Chapman*).' [Citation.] Under the *Chapman* standard, an error is prejudicial and requires reversal of the conviction unless it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' (*Chapman*, at p. 24.) Accordingly, the error ' "will be deemed harmless only in unusual circumstances, such as where each element was undisputed, the defense was not prevented from contesting any [or all] of the omitted elements, *and* overwhelming evidence supports the omitted element." ' (*Merritt*, *supra*, 2 Cal.5th at p. 828, italics added.) Alternatively stated, we must review the record to determine whether it contains evidence that could rationally lead to a contrary finding with respect to the omitted element. (*Mil*, at p. 417.)" (*People v. Jennings* (2019) 42 Cal.App.5th 664, 679 (*Jennings*).)

In *Young*, *supra*, 34 Cal.4th 1149, the California Supreme Court considered a case involving a defendant's conviction of three counts of first degree murder. (*Id.* at p. 1165.) During the penalty phase, the prosecutor alleged commission of witness

11.

intimidation (§ 136.1, subdivision (c)) as an aggravating factor (§ 190.3). (*Young*, at pp. 1206–1207.) The evidence demonstrated the defendant, upon learning the witness was cooperating with police, punched the witness about the face causing him to bleed from the nose and mouth and told him, " 'You snitched on me and my lawyer had it in black and white and I should have killed you.' " (*Id*. at p. 1207, fn. omitted.) The trial court failed to instruct the jury that the prosecution was required to prove "defendant had the specific intent to dissuade [the] witness from testifying." (*Id*. at p. 1211.) The Supreme Court held the error harmless because the "evidence of [the] defendant's specific intent to dissuade [the witness] from testifying at trial was overwhelming."[4] (*Id*. at p. 1212.)

In *People v. Jones* (1998) 67 Cal.App.4th 724, the trial court erroneously instructed the jury that witness intimidation under section 136.1 is a general intent crime. (*Jones*, at p. 727.) The evidence in support of the charge was the following conversation: The defendant said to the witness, " 'Are you going to testify? Don't testify.' " The witness asked, " 'What are you going to do about it?' " The defendant replied, " 'I'll do whatever I have to. Just don't testify, man. I'm telling you … I'll do whatever I have to, man.' " The defendant repeated these words to the witness four or five times. (*Id*. at p. 726.) On appeal, the defendant argued his words were susceptible to multiple interpretations, including innocent interpretations. (*Id*. at p. 728.) The court concluded the defendant's statements were not ambiguous and unequivocally demonstrated the defendant's intent to threaten the witness with reprisal if he testified. (*Ibid*.) The court held the error was harmless beyond a reasonable doubt. (*Ibid*.)

---

[4] In *Young*, because the trial court's error was one of state law occurring during the penalty phase, the California Supreme Court analyzed whether the error was prejudicial under the less stringent *Watson* standard of whether "there is a reasonable possibility that the jury would have reached a different result if the error had not occurred." (*Young*, *supra*, 34 Cal.4th at pp. 1211–1212; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Similarly, in *People v. Brenner* (1992) 5 Cal.App.4th 335, the trial court erroneously instructed the jury that dissuading a victim from reporting a crime under section 136.1, subdivision (c), was a general intent crime. (*Brenner*, at p. 339.) The evidence supporting the charge was the defendant's statement to the witness that if the witness called the police to report defendant's assault and battery of the witness and a related theft, the defendant would kill the witness. (*Ibid*.) The court determined the defendant's statement was unambiguous in its intent, and "[i]f the jury believed [the defendant] made the statement, the actual words of the statement required the jury to also believe that [the defendant] intended to dissuade or prevent the victim from calling the police by threatening the victim." (*Id*. at pp. 339–340.) The court held the error was harmless beyond a reasonable doubt. (*Id*. at p. 340.)

An example of where such error was not held harmless beyond a reasonable doubt is *People v. Pettie* (2017) 16 Cal.App.5th 23. There, a father involved in a custody dispute with his ex-wife called the police after their daughter came home with bruises and told him that her mother's boyfriend had hit her. (*Id*. at p. 33.) The defendant boyfriend and several codefendants confronted the father and, after one of them called him a "cop caller," they proceeded to beat him. (*Ibid*.) The father was able to run away and heard gunshots as he ran. (*Ibid*.) The defendants were charged with multiple crimes including dissuading a witness under section 136.1, subdivision (c). (*Pettie*, at p. 40.) At trial, the court failed to instruct the jury concerning the state of mind required for a violation of the statute. (*Id*. at p. 68.) On appeal, the defendants argued that their conduct could be interpreted as exacting retribution or revenge for the father's prior report to the police rather than as a threat against him making a future report to authorities. (*Id*. at p. 69.) The court of appeal, noting that a jury could have found either interpretation true, held the error was not harmless beyond a reasonable doubt. (*Id*. at pp. 68, 71.)

Another example where such error was not held harmless beyond a reasonable doubt is *People v. Ford* (1983) 145 Cal.App.3d 985. There, the defendant was charged

13.

under section 136.1, subdivision (c), after telling a witness who testified in a preliminary hearing against him and other codefendants, " 'You punk mother f[**]ker, we'll get you, you've got kids.' " (*Ford*, at pp. 987, 989.) Like other cases discussed herein, the trial court failed to instruct the jury that the crime required specific intent. (*Id*. at p. 988.) On appeal, the court held the threatening language could be construed by the jury as either a "simple angry statement of impending revenge," in which case the crime was not committed, or as a threat should the witness decide to testify in the future, in which case the crime was committed. (*Id*. at pp. 989–990.) The court reversed the conviction. (*Id*. at p. 990.)

### 2.    Analysis

Here, defendant contends the jury's acquittal on the charge of assault with a deadly weapon and its rejection of allegations that defendant possessed a firearm "reveal that the jury did not believe [A.V.]" Defendant further contends the charge of possession of a firearm was "closely tied" to the charge of dissuading a victim and notes the prosecutor argued, "[Defendant] pulled out the gun and said, 'You'll be sorry.' There's only one way for that to be meant. There's only one way for that to be interpreted and that is, 'You call the cops, this bullet's going through your head.' " Defendant further argues it is "possible the jury concluded [he] dissuaded a witness based on the 911 caller's statement that [he] was screaming at [A.V.] while hitting her. Thus, [he argues,] it is possible the jury convicted [him] without believing the testimony that he pointed a gun at [A.V.] and told her she would be sorry if she called the police."

However, the jury did return convictions against defendant for criminal threats against A.V. (§ 422), simple assault (§ 240), and infliction of corporal injury result in a traumatic condition on a victim (§ 273.5, subd. (a)). The trial court's errors in instructing the jury on the specific intent required for dissuading a victim did not vitiate any of these findings. Here, the criminal threats conviction required the jury to find that defendant orally threatened to unlawfully kill A.V. or unlawfully cause her great bodily injury. The

14.

only evidence the jury could have permissibly relied upon to convict defendant of criminal threats was A.V.'s testimony that he told her "[n]ot to dare call the police because [she] would be sorry about it[,]"[5] or her testimony that the following day he told her "if [she] dare[d] to call the police, [she] knew what would happen." Thus, contrary to defendant's theory on appeal, the jury did believe A.V.'s testimony concerning the referenced statements and found, beyond a reasonable doubt, defendant made those statements to her.[6] The jury further found, beyond a reasonable doubt, defendant assaulted A.V. and inflicted corporal injury upon her.

Applying the test set forth in *Mil* and *Jennings*, we consider whether the record " 'contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " (*Mil*, *supra*, 53 Cal.4th at p. 417; *Jennings*, *supra*, 42 Cal.App.5th at p. 679.) Here, the omitted element was whether defendant acted "maliciously" as defined by statute. For purposes of section 136.1 subdivision (c)(1), "[a] person acts *maliciously* when he or she unlawfully intends to annoy, harm, or injure someone else in any way, or intends to interfere in any way with the orderly administration of justice." (CALCRIM 2623; § 136.)

Considering the malice element and looking at the entire record, we conclude there is no evidence in the record that could rationally lead a jury to find that defendant's conduct was *not* intended to annoy, harm, or injure A.V. Defendant's act of pushing A.V. to the ground and putting his foot on her face was clearly intended to annoy, harm, or injure her.

---

[5] A.V. reiterated her testimony on two occasions with only slight variation, as follows: "That if [she] called the cops, [she would] be sorry about it[,]" and "[defendant] told [her] not to even think of calling the cops because [she] was going to be sorry for it."

[6] The only other percipient witness to testify was the daughter who was not in the immediate vicinity of the assault and who offered no testimony regarding statements made by defendant.

Viewing specific intent as an intent to do some further act or achieve some additional consequence (see *People v. Daniels* (1975) 14 Cal.3d 857, 860), defendant's statement was clearly intended to prevent a future act – i.e., the future act of A.V. contacting the police. No rational jury could interpret words like 'don't dare call the police' as anything other than an attempt to prevent that future act. And, in fact, the jury instruction given for the offense made it clear that, to convict defendant, the jury must find, beyond a reasonable doubt, defendant intended to prevent A.V. from reporting her victimization. The jury's verdict leaves no reasonable doubt that this element of specific intent was met.

We are left, then, to consider defendant's claim that the jury's consideration of the voluntary intoxication defense was impacted by the trial court's errors because the voluntary intoxication instruction referred to specific intent but no instruction on the specific intent element for dissuading a witness through the use, or threat, of force was given. Without any instruction on the specific intent for that crime, defendant argues, the jury could not apply the voluntary intoxication instruction to it. The People fail to address this contention.

"Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent." (§ 29.4) Here, the voluntary intoxication defense was only allowed in connection with the charges of dissuading a witness (§ 136.1) and making criminal threats (§ 422). As to the criminal threats count, the jury rejected the defense, refusing to find that defendant's alleged voluntary intoxication affected his ability to form the specific intent that his verbal statements be taken as a threat. (See § 422, subd. (a) [violation requires "specific intent that the statement … is to be taken as a threat"].)

Furthermore, the trial court's instruction on dissuading a victim, although an erroneous instruction for the aggravated form of the crime (§ 136.1, subd. (c)(1)), was a correct instruction for the basic form of the crime (*id*., subd. (b)) and required that the

jury find that defendant intended to prevent A.V. from reporting her victimization before convicting him of the charge. Notably, the jury rejected the voluntary intoxication defense to this latter charge and refused to find that defendant's alleged voluntary intoxication affected his ability to form the intent to prevent A.V. from reporting his actions. (See *ibid.*)

Given those findings, the question then becomes, could the jury have rationally found voluntary intoxication a defense to whether defendant acted maliciously (i.e., with the intent to vex, annoy, harm, or injure A.V.)? (See *Mil, supra,* 53 Cal.4th at p. 417; *Jennings, supra,* 42 Cal.App.5th at p. 679; § 136.) The jury, having found voluntary intoxication did not affect defendant's ability to form the specific intent required for conviction under section 422 or under section 136.1, subdivision (b)(1), could not rationally have found differently concerning the specific intent required for a finding of malice under section 136.1, subdivision (c). We conclude the trial court's errors were harmless beyond a reasonable doubt as to the voluntary intoxication instruction.

There is an additional reason to reject defendant's argument that the instructional errors prevented the jury from properly applying the defense of voluntary intoxication: defendant was not entitled to a voluntary intoxication instruction in the first place.

A defendant is entitled to a jury instruction on voluntary intoxication only when there is substantial evidence both that the defendant was voluntarily intoxicated and that his intoxication "affected [his] 'actual formation of specific intent.' " (*People v. Williams* (1997) 16 Cal.4th 635, 677; *People v. Verdugo* (2010) 50 Cal.4th 263, 295.) Here, the evidence of defendant's voluntary intoxication was scant, but assuming it amounted to substantial evidence, there was still no evidence defendant was unable to form the specific intent required for a finding of malice.[7] Evidence of voluntary intoxication

---

[7] Moreover, defense counsel did not argue the issue of voluntary intoxication to the jury. The defense theory of the case was not based in any way on the issue of voluntary intoxication.

without evidence of its effect on a defendant's ability to formulate specific intent is insufficient to establish the defense. (*Williams*, at pp. 677–678.) Consequently, the evidence did not support the voluntary intoxication instruction.

In sum, we conclude for all these reasons that the trial court's errors in failing to instruct on both the malice element and the malice definition were harmless.

## II. The Conviction for Simple Assault Must Be Reversed

Defendant contends his conviction for misdemeanor assault (§ 240) must be reversed because it is a lesser included offense of his conviction for inflicting corporal injury resulting in a traumatic condition (§ 273.5). We agree.

### A. *Law*

"In California, a single act or course of conduct by a defendant can lead to convictions 'of *any number* of the offenses charged.' [Citations.] But a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034.)

"[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) In determining whether multiple convictions based on the same conduct is proper, we look at the statutory elements of each offense and ask whether the greater offense can be committed without also committing the lesser offense. (*Id*. at p. 1230.) The question must be answered in the abstract without consideration of the underlying facts of the case. (*People v. Sanders* (2012) 55 Cal.4th 731, 738.)

Simple assault is the "unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) The offense of infliction of corporal injury occurs where a person "willfully inflicts corporal injury resulting in a traumatic condition upon a victim described [in the statute] …." (§ 273.5, subd. (a).) For purposes of section 273.5, the term "willfully" simply means an intent to commit the act that results in corporal injury. (*People v. Thurston* (1999) 71 Cal.App.4th 1050, 1053, 1055.)

18.

The term "corporal injury" is unambiguous and means bodily injury. (See *People v. Dunbar* (2012) 209 Cal.App.4th 114, 117 [plain meaning of unambiguous language controls].) Finally, the term "traumatic condition" is statutorily defined to mean "a condition of the body, such as a wound, or external or internal injury, …, whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (d).)

It is evident that a person who intends to inflict, and does inflict, bodily injury on a person which results in a traumatic condition on that person, necessarily commits an assault. Thus, simple assault is a lesser included offense of infliction of corporal injury result in a traumatic condition. (*People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952; *People v. Van Os* (1950) 96 Cal.App.2d 204, 206.)

**B.      *Analysis***

The People acknowledge that simple assault (§ 240) is a lesser included offense of infliction of corporal injury (§ 273.5) and that a person may not be convicted of both the greater and lesser included offense if based on a single act. However, they contend defendant's convictions for misdemeanor assault and infliction of corporal injury were proper because they were based on separate acts. In support of this proposition, the People cite *People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1519 (several calls made the same day to dissuade a witness from testifying justified separate convictions for dissuading a witness).

According to the People, the evidence showed defendant battered and injured A.V., but then stopped battering her, and warned her against calling the police while holding a small black gun to her head. The People argue "it is apparent that the act that formed the basis for the original assault with a firearm charge, which the jury ultimately concluded was in fact simple assault, was separate from the acts that formed the basis for the infliction of corporal injury charge."

The weakness of the People's argument, however, lies in the fact the jury rejected all firearm allegations and acquitted defendant of assault with a deadly weapon (§ 245).

Absent the threat of a firearm, the conviction for misdemeanor assault was necessarily premised on the same conduct that resulted in a conviction for infliction of corporal injury.

" 'If the evidence supports the verdict as to a greater offense, the conviction of that offense is controlling, and the conviction of the lesser offense must be reversed.' " (*People v. Cole* (1982) 31 Cal.3d 568, 582.)  Because the jury found defendant's conduct to be a violation of the greater offense of infliction of corporal injury, we reverse the conviction for simple assault.

## III.    Resentencing Is Required*

In 2021, the California Legislature enacted Assembly Bill No. 518 (2021–2022 Reg. Sess.) and Senate Bill No. 567 (2021–2022 Reg. Sess.) which amended the state's sentencing laws.  The People and defendant both agree, as do we, that defendant is entitled to the benefits of these new laws and that resentencing is necessary.  We note that in resentencing defendant, the trial court is allowed to "revisit all prior sentencing decisions" (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425) and "reconsider all sentencing choices" (*People v. Hill* (1986) 185 Cal.App.3d 831, 834).

### A.    *Senate Bill No. 567*

Prior to its amendment by Senate Bill No. 567, section 1170 provided, in relevant part:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."  (Former § 1170, subd. (b).)  With the passage of Senate Bill No. 567, effective January 1, 2022, section 1170 provides, in part:  "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)."  (§ 1170, subd. (b)(1).)  The

---

* See footnote, *ante*, page 1.

exceptions provided in paragraph (b)(2) of section 1170 provide, in part, that the court may exceed the middle term "only when there are circumstances in aggravation of the crime that justify" the greater sentence and where "the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) Except in the case of enhancements, a court is also permitted to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) A court continues to have the discretion (and, in some cases, is mandated) to impose the lower of the three specified terms when sentencing a defendant for a crime. (§ 1170, subd. (b)(6), (7).) Thus, Senate Bill No. 567 confers a substantial benefit on a defendant at the time of sentencing.

There is no indication that the Legislature did not intend Senate Bill No. 567 to apply retroactively to convicted defendants whose cases are not yet final. Absent a contrary indication from the Legislature, a defendant whose case is not yet final is entitled to the ameliorating benefits of newly enacted sentencing statutes. (*In re Estrada* (1965) 63 Cal.2d 740, 744–746.)

Here, the trial court sentenced defendant to the upper term of imprisonment on count 4 (infliction of corporal injury). The only aggravating factor identified in the record was not stipulated to by defendant, was not proven before a jury or the judge in a court trial and was not a prior conviction based on a certified record of conviction. Thus, the sentence imposed on defendant is contrary to the provisions of the newly enacted statute.

Because defendant's case is not yet final, he is entitled to the benefit of Senate Bill No. 567. Accordingly, resentencing is necessary.

**B.** *Assembly Bill No. 518*

Prior to its amendment by Assembly Bill No. 518, section 654 provided: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Former § 654, subd. (a).) Assembly Bill No. 518 amended section 654 effective January 1, 2022, to provide, in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Thus, a trial court is no longer required to impose a sentence under the crime providing for the longest possible sentence but may sentence a defendant under any one of the applicable crimes.

Absent a contrary showing, we presume the trial court followed section 654 as it existed immediately prior to January 1, 2022, in sentencing defendant. (*People v. Mosely* (1997) 53 Cal.App.4th 489, 496–497; Evid. Code § 664 [presumption that official duty has been regularly performed].) The current version of section 654 "provides the trial court new discretion to impose a lower sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 379.) As with Senate Bill No. 567, there is no indication that the Legislature did not intend Assembly Bill No. 518 to apply retroactively to a defendant whose case is not yet final. Accordingly, a defendant whose case is not yet final is entitled to its benefit. (*People v. Mani*, at p. 379; *In re Estrada*, *supra*, 63 Cal.2d at pp. 744–746.)

Here, the trial court imposed an upper sentence of four years on count 4 (infliction of corporal injury), a concurrent middle sentence of three years on count 1 (dissuading a victim), and a middle sentence of two years on count 2 (making criminal threats) stayed pursuant to former section 654. In sentencing defendant on the latter two counts, the court was required to follow former section 654 and choose a term of imprisonment from

count 1 which provides for a possible two-, three-, or four-year sentence (§ 136.1, subd. (c)) and stay the sentence for count 2 which provides for a possible sentence of 16 months, two years, or three years.  (§§ 18, subd. (a), 422, subd. (a).)  With the passage of Assembly Bill No. 518, the court now has discretion to choose a term of incarceration applicable to either charge, while staying the term applicable to the other charge. Defendant is entitled to the benefit of Assembly Bill No. 518 upon resentencing.

## DISPOSITION

The conviction for simple assault in count 3 (§ 240) is reversed and the remaining convictions are affirmed.  The matter is remanded to the trial court for resentencing consistent with this opinion and relevant legislation.


                                                                    POOCHIGIAN, ACTING P. J.
WE CONCUR:


FRANSON, J.


DE SANTOS, J.