Filed 2/21/24  P. v. Zepeda CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ELISEO MARTINEZ ZEPEDA,<br><br>        Defendant and Appellant. | A165787<br><br>(Sonoma County<br>Super. Ct. No. SCR-749366-2) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MANUEL AVINA-GARCIA,<br><br>        Defendant and Appellant. | A165924<br><br>(Sonoma County<br>Super. Ct. No. SCR-749366-1) |

Defendant Manuel Avina-Garcia fired gunshots from a vehicle driven by his codefendant Eliseo Zepeda as they drove past the residence of someone who minutes earlier had threatened to call the police on them.  Defendants were tried on various counts, including the felony offense of attempting to dissuade a witness by force or threat.  (Pen. Code, § 136.1, subd. (c)(1).)[1]  To maintain her privacy, the complaining witness was referred to throughout

---

[1]        Further unspecified statutory references are to the Penal Code.

1

the trial as Jane Doe.  On appeal from the judgments of conviction, defendants raise various claims of error including:  (1) insufficient evidence for the crime of attempted witness dissuasion by force or threat; (2) ineffective assistance due to counsel's failure to (a) object to use of the Doe pseudonym at trial, (b) seek exclusion of a portion of Doe's testimony under Evidence Code section 1101, and (c) move for separate trials; and (3) erroneous failure of the trial court to give unanimity instructions to the jury.  We consolidated the cases and now affirm the judgments.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2022, the Sonoma County District Attorney charged Avina-Garcia with five counts:  (1) attempting to dissuade a witness by force or threat (§ 136.1, subd. (c)(1); count one),  with an enhancement for personally using a firearm (§ 12022.5, subd. (a)); (2) shooting from a motor vehicle (§ 26100, subd. (d); count two); (3) discharging a firearm with gross negligence (§ 246.3, subd. (a); count three); (4) possessing a firearm as a felon (§ 29800, subd. (a)(1); count four); and (5) carrying a concealed firearm in a vehicle (§ 25400, subd. (a)(1); count five).

Zepeda was charged with two counts:  (1) attempting to dissuade a witness by force or threat (§ 136.1, subd. (c)(1); count one); and (2) unlawfully and knowingly permitting another to discharge a firearm from a vehicle he was driving (§ 26100, subd. (b); count six).

**A. Prosecution Case**

In September 2021, at around 10:30 or 10:45 p.m., Jane Doe heard very loud music and a car "driving back and forth at high speed" in the parking lot of her apartment complex on West Avenue in Santa Rosa.  She went to investigate and saw two males in a black pickup truck.  She approached the vehicle from the driver's side and stood approximately five to ten feet away.

2

The driver was Avina-Garcia, and Doe noted he was wearing a black baseball cap, black shirt, and black shorts. The passenger was Zepeda, and he appeared to be drunk.

Doe asked defendants in Spanish if they knew anyone in the apartment complex, but they did not say whether they did. She asked what defendants were doing there, and Avina-Garcia replied that "they can do whatever they want," and Zepeda "agreed." When Doe told defendants they were disturbing the residents and had to leave, Avina-Garcia stated in English that "he belonged to a gang," which frightened Doe. Doe told defendants she was going to call the police, but "[t]hey just seemed like they didn't care." Doe then recorded the license plate number of the truck. As the truck drove away, Zepeda threw two bottles out the passenger side window toward the area where Doe was standing.

Approximately 15 to 20 minutes later, Doe again heard loud music and a car pulling up outside her apartment. She looked out a window and saw a black Nissan Altima driving slowly and then stopping near Doe's apartment building. Because the vehicle drove slowly past her window, Doe was able to identify the individuals in the car as defendants. This time Zepeda was driving, and Avina-Garcia was in the passenger's seat, still wearing a black baseball cap. The Nissan stopped, and Avina-Garcia "fired gunshots up to the sky." Once the Nissan sped away, Doe called the apartment complex's manager as well as 911.

Police officers in the vicinity heard the gunshots and were dispatched to the West Avenue apartment complex. Doe provided the officers with descriptions of defendants and the license plate number of the pickup truck, which was registered to a residence on Kearney Street. Officers found a black pickup truck parked in the driveway of the Kearney Street home, and

3

the hood was still warm to the touch. A little later, a black Nissan Altima approached the Kearney Street residence with Avina-Garcia driving and Zepeda in the passenger's seat. Officer Alec Thompson initiated a traffic stop and observed that defendants' clothing and appearance matched those of the suspects. While Thompson was detaining Avina-Garcia, Zepeda fled but was eventually detained. Zepeda initially gave officers a false name.

A search of the Nissan uncovered an empty Smith and Wesson .38-caliber revolver under the front passenger seat and six spent .38-caliber ammunition casings.

Doe was brought to the location of the arrest for an in-field showup. Remaining inside the patrol car, Doe identified Avina-Garcia, and she was "sure it was him." She observed that Avina-Garcia was wearing the same black baseball cap with white lettering and a black shirt. Doe also identified the Nissan Altima and the pickup truck as the two vehicles she saw earlier.

## B. Defense Case

### 1. *Avina-Garcia*

Officer Jose Andrade searched Avina-Garcia's cellphone and saw that "two to three phone calls" had been made between defendants at approximately 11:15 and 11:17 p.m. on the night of the incident. There was also a call from Avina-Garcia to Zepeda at 10:44 that evening. Because these calls occurred at around the time when defendants were allegedly in the same car, Avina-Garcia argued there was a reasonable doubt that he was the shooter in the Nissan seen by Doe.

### 2. *Zepeda*

Zepeda testified he worked with Avina-Garcia's father and had been living at the Kearney Street residence for about a month. Zepeda had not spent time with Avina-Garcia outside of the home and did not know that

4

Avina-Garcia owned a gun or whether he had committed any crimes in the past. On the night in question, Zepeda wanted to go to the West Avenue apartment complex because a coworker had asked for a case of beer. Avina-Garcia agreed to take Zepeda there in his truck.

After arriving at the apartment complex, Zepeda drank one beer inside the truck as they waited for the coworker, who did not answer Zepeda's phone call. Defendants waited for about three minutes before Doe confronted them. According to Zepeda, Avina-Garcia was not driving fast within the complex, but there was loud music coming from the truck. Zepeda recalled Doe asking what defendants were doing there, "and we said nothing." He also recalled her asking them to leave. Zepeda knew Doe was angry because of the loud music, but Avina-Garcia turned the music even louder. As defendants left, Zepeda noticed Doe taking a picture of the license plate number of the truck with her phone. Zepeda denied throwing a beer bottle at her.

After returning to the Kearney Street home, Zepeda called the coworker, but he did not respond. Zepeda suggested to Avina-Garcia that they attempt to deliver the beer again. This time, they took a car that Zepeda had borrowed from a friend because Avina-Garcia's truck "did not have gas anymore." Zepeda drove, while Avina-Garcia rode in the passenger seat. Zepeda knew they were returning to the location where they encountered "the lady that didn't like the loud music before," but the music was again playing loudly. Defendants again made no contact with Zepeda's coworker.

Zepeda testified he drove slowly through the parking lot because "it was a little narrow" for him to turn around. Avina-Garcia did not tell Zepeda to stop the vehicle, and Zepeda slowed down because of a pothole. Avina-Garcia then reached his hand out of the passenger side window and fired a

gun into the air. Zepeda did not know Avina-Garcia was going to shoot and did not even realize he had a gun. As soon as defendants left the apartment complex, Zepeda pulled over and "gave the car to" Avina-Garcia so he could drive, asking him "why did you shoot." Zepeda was "scared" and "[a] little bit" upset and did not want to continue driving because he "had already been told by the law not to." Defendants then went to a taco truck and ate before Avina-Garcia drove them home, where the police were waiting for them. When Avina-Garcia saw the police, he handed the gun to Zepeda to put underneath the passenger seat. Zepeda attempted to flee from the police and gave untruthful responses to their questions because he was scared.

Several months prior to the trial, Zepeda spoke with the district attorney and Officer Andrade, seeking leniency from the prosecution.

### 3. *Rebuttal Evidence*

Officer Andrade testified that Zepeda, at the time of the arrests, provided a false name and date of birth and lied that he had not previously been arrested. He denied knowing the owner of the Nissan and of the presence of a weapon in the vehicle, and said he was not with Avina-Garcia when the gun in the Nissan was fired.

Officer Thompson was recalled and testified that Zepeda gave him a false name and produced an identification card with that name. In light of Zepeda's testimony that defendants switched vehicles because the pickup truck was out of gas, Thompson testified there were several gas stations along the route from the West Avenue apartment complex to the Kearney Street address.

### 4. *Verdict, Sentence, and Appeal*

The jury convicted defendants of the charged offenses and found the personal firearm use allegation against Avina-Garcia to be true. Avina-

6

Garcia was sentenced to nine years and four months in prison. Zepeda was sentenced to two years of formal probation.

Defendants filed timely notices of appeal. After they filed their opening briefs, we granted the People's unopposed motion to consolidate the appeals for purposes of further briefing, any oral argument, and decision. We also granted Zepeda's unopposed motion to join in Avina-Garcia's briefing.

<b>DISCUSSION</b>

### A. Sufficiency of the Evidence

#### 1. *Avina-Garcia's Liability for Attempted Witness Dissuasion by Force or Threat*

Avina-Garcia contends the evidence was insufficient to support his conviction for attempted witness dissuasion by force or threat because the prosecution failed to prove that (1) Doe witnessed any crimes by defendants prior to the alleged acts of dissuasion; and (2) at the time of the shooting, Avina-Garcia had the requisite intent to deter Doe from reporting any such crimes.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*People v. Avila* (2009) 46 Cal.4th 680, 701.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

7

"Section 136.1 criminalizes trying to dissuade a [witness] from reporting a crime." (*People v. Ortiz* (2002) 101 Cal.App.4th 410, 415–416.) To prove attempted witness dissuasion under section 136.1, subdivision (b)(1), " 'the prosecution must show (1) the defendant has attempted to prevent or dissuade a person (2) who is a victim or witness to a crime (3) from making any report of his or her victimization to any peace officer or other designated officials.' [Citation.] The prosecution must also prove the defendant specifically intended that his acts would prevent or dissuade the victim or witness from making the report." (*People v. Cook* (2021) 59 Cal.App.5th 586, 590.) An act or attempted act of witness dissuasion constitutes a felony when the act is done "knowingly and maliciously" and "is accompanied by force or by an express or implied threat of force or violence[.]" (§ 136.1, subd. (c)(1).)

Viewing the record in the light most favorable to the judgment, we conclude there was substantial evidence that Doe witnessed defendants committing crimes prior to the attempted acts of witness dissuasion. Doe testified that the reason she confronted defendants was because she noticed the pickup truck "driving back and forth at high speed" and playing "very loud" music in the West Avenue apartment complex, all of which occurred late on a Sunday evening outside a building where residents were presumably trying to sleep. A rational trier of fact could conclude from this evidence that Doe witnessed defendants' illegal conduct of reckless driving (Veh. Code, § 23103, subd. (b)) or disturbing the peace (§ 415, subd. (2)). Indeed, when Doe confronted defendants, she told them that they were disturbing the residents and that she would call the authorities, a clear indication she believed she had witnessed illegal conduct.

Defendants maintain the jury could not have made such findings because the People never charged defendants for the witnessed crimes or

8

identified what those offenses were. Their first point fails because defendants cite no authority requiring that charges be filed on a witnessed crime in order to support a conviction for dissuading a witness from reporting that crime. (See *People v. Williams* (1997) 16 Cal.4th 153, 226, fn. 6 (*Williams*) [arguments for which a party provides no supporting authority need not be addressed].)

As to their second point, we note that the trial court appropriately instructed the jury under CALCRIM No. 2622 as to count one,~(CT185)~ and that defendants do not contend the instruction was insufficient for failing to specifically identify the witnessed crimes. But even assuming the jury instructions were incomplete in this regard, any error was harmless in light of the prosecutor's closing arguments that Doe told defendants she was "going to call the police" and that she intended to do so "because of [defendants'] reckless driving, because they had their music loud at 10:30 p.m. on Sunday night." Thus, it was made clear to the jury that the People's theory on count one was based on the evidence of Doe's having witnessed defendants' unsafe driving and/or disturbance of the residents' peace. "Considering the instruction, the prosecutor's argument, and the strength of the evidence, we are satisfied the jury understood its mission and completed it properly. Assuming the instruction [was] incomplete, there was no harm in this case." (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 189.)

Zepeda insists the People's failure of proof is evidenced by the fact that during deliberations, jurors asked questions regarding the elements and statutory language of section 136.1,[2] and further inquired whether the act of

---

[2]     Those questions were as follows: "Provide a copy of the count 1 section 136(c)"; "Legal definition of 'Abetting' "; and "Please send clarification on subdivisions a + b of section 136.1 for count 1."

dissuasion could "be defined as the act of driving in with loud music or must it include the act of shooting the gun." We discern no confusion from these questions as to the jurors' understanding of the witnessed crimes. Nor do we accept Zepeda's broader conclusion that the questions reflect the jurors' "concerns about whether this crime had been committed by either defendant." Again viewing the record in the light most favorable to the judgment, the questions reasonably reflect the jurors' desire to review the statutory language of section 136.1 and their attempts to agree on the act or acts giving rise to each defendant's liability.

Avina-Garcia contends the evidence of his gang affiliation statement to Doe could not support the crime of attempted witness dissuasion because the statement preceded Doe's threat to call the police. Doe testified, however, that Avina-Garcia made the statement after she asked defendants to leave because they were causing a disturbance. A trier of fact could reasonably conclude that Avina-Garcia, having brushed off Doe's request, believed she might yet proceed to notify authorities, and that claiming gang membership would dissuade her from doing so. Moreover, and in any event, the dissuasion element was satisfied by the evidence of Avina-Garcia firing the gun, which occurred after Doe threatened to call the police.

Avina-Garcia nevertheless insists the shooting was not done with the requisite intent to dissuade Doe from calling the police because it "occurred well after the men had left the area[,] and that if Doe had intended to call the police, she would have already done so." But viewing the record in the light most favorable to the judgment, a trier of fact could reasonably find that, notwithstanding the 15-minute period between the first encounter and the shooting, defendants' intent in returning to the scene was to make Doe fearful after she witnessed their crimes, took down their license plate

number, and threatened to call authorities. True, Doe could have called the police during that 15-minute interval, but a trier of fact could reasonably infer from defendants' decision to switch vehicles that they took this measure to evade detection in the event officers were already on the scene.[3]

Avina-Garcia contends the shooting could simply have been an act of anger or retaliation against Doe, not an attempt to dissuade her from calling the police. But because that is not the only plausible inference from the evidence, it is not grounds for reversal. (*People v. Hudson* (2016) 244 Cal.App.4th 1318, 1324.) And Avina-Garcia's reliance on *People v. Ford* (1983) 145 Cal.App.3d 985 is unavailing because, unlike the situation in that case, the jury here was properly instructed on the specific intent element of section 136.1.

Finally, we reject the contention that the evidence was insufficient because defendants did not know precisely where Doe lived or whether she was still in the area when the shots were fired. A trier of fact could reasonably conclude that in returning to the same parking lot where Doe had confronted them just 15 minutes earlier, playing loud music as they had before, defendants believed Doe would likely hear both the music and the gunfire and would thereby be dissuaded from following through on her prior threat to call the police.

In sum, we conclude there was substantial evidence supporting Avina-Garcia's conviction on count one.

### 2. *Zepeda's Liability for Aiding and Abetting and* for *Permitting Another to Shoot from Vehicle*

Zepeda contends there was insufficient evidence to support his conviction for aiding and abetting Avina-Garcia's crime of attempted witness

---

[3] As the prosecutor argued in closing, Zepeda "switched cars so as not to be easily detected[.]"

11

dissuasion, and his conviction for knowingly permitting another to shoot from a vehicle while he was driving.

As to the first offense, "[a] person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) Among the factors that may be considered in making this determination are " 'presence at the scene of the crime, companionship, and conduct before and after the offense.' " (*People v. Campbell* (1994) 25 Cal.App.4th 402, 409.) As discussed in part A.1, *ante,* there was sufficient evidence supporting Avina-Garcia's conviction for witness dissuasion.

As for the second crime, the People had to show that Zepeda was a driver or owner of a vehicle, and that he knowingly permitted another person to discharge any firearm from the vehicle. (§ 26100, subd. (b).)

A trier of fact could reasonably conclude from the prosecution's evidence that Zepeda knew Avina-Garcia intended to commit the crime of dissuading a witness by threat (shooting a gun), and that Zepeda intended to, and did aid, abet, and permit the shooting to occur while Zepeda was driving. As the record reflects, Zepeda drove Avina-Garcia back to the same apartment complex where Doe had just threatened to call the police, and Zepeda stopped the car as Avina-Garcia extended his arm out the window and fired the shots. From this, the jury could reasonably infer that Zepeda intentionally stopped in order to allow Avina-Garcia to fire. And based on the evidence that Zepeda was previously present when Doe threatened to call police and saw her record the license plate number of the truck, the jury

12

could also reasonably conclude that Zepeda knew the shooting was intended to dissuade Doe from calling the police.

The jury was not required to credit Zepeda's self-serving version of the events. (*People v. Silva* (2001) 25 Cal.4th 345, 369 (*Silva*).) Indeed, Zepeda's repeated falsehoods to law enforcement gave the jury ample reason to reject his credibility. Moreover, Zepeda's statements were undermined in key respects. For instance, Zepeda's claim that he and Avina-Garcia returned to the West Avenue apartment complex to deliver beer to his coworker was weakened by his acknowledgment on cross-examination that he had not spoken to the coworker after the first unsuccessful attempt. And his testimony that defendants changed vehicles because the truck was low on fuel was undermined by evidence that there were several gas stations along the route between the West Avenue apartment complex and the Kearney Street home at which defendants could have refueled.

Zepeda attempts to cast doubt on the evidence of his intent by claiming he does not speak English and therefore did not know that Avina-Garcia claimed gang membership. He also emphasizes that he had known Avina-Garcia only for a short time, so there was no reason to believe he knew Avina-Garcia owned a gun. Again, the jury was entitled to reject Zepeda's self-serving testimony. (*Silva, supra,* 25 Cal.4th at p. 369.) Moreover, and in any event, Doe testified that she spoke mostly in Spanish during the first encounter, and Zepeda acknowledged that he understood the nature of the confrontation. We may also credit Doe's testimony that Zepeda appeared to agree with what Avina-Garcia was saying, and that Zepeda threw two beer bottles at Doe as defendants left the complex. From this, a trier of fact could reasonably conclude Zepeda understood the nature of the disagreement, sided with Avina-Garcia, and intended to permit and assist him in the crime of

13

witness dissuasion on their return. It matters not how long Zepeda knew Avina-Garcia prior to the shooting. That Zepeda stopped the car at the precise time of the shooting was sufficient to support a finding that Zepeda knowingly aided, abetted, and permitted Avina-Garcia to fire a gun while Zepeda was driving.

In sum, substantial evidence supported Zepeda's convictions for aiding and abetting attempted witness dissuasion and for knowingly permitting another person to fire from a vehicle while driving.

### B. Ineffective Assistance of Counsel

Avina-Garcia argues certain actions and omissions of his trial counsel amounted to ineffective assistance. Specifically, he contends counsel committed unprofessional errors by: (1) withdrawing her prior objection to the use of the pseudonym "Jane Doe"; (2) failing to object to Doe's testimony that Avina-Garcia claimed gang membership; and (3) failing to move for separate trials of the two defendants.

"In order to demonstrate ineffective assistance, a defendant must first show counsel's performance was deficient because the representation fell below an objective standard of reasonableness under prevailing professional norms. [Citation.] Second, he must show prejudice flowing from counsel's performance or lack thereof. Prejudice is shown when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Williams*, *supra*, 16 Cal.4th at pp. 214–215 citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–688 (*Strickland*).)

"A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that

14

counsel's actions and inactions can be explained as a matter of sound trial strategy. . . .  If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*People v. Gamache* (2010) 48 Cal.4th 347, 391 (*Gamache*).) "[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal." (*People v. Lopez* (2008) 42 Cal.4th 960, 972.)

## 1. *Withdrawing Objection to "Jane Doe" Pseudonym*
### a. Additional Facts

In his motions in limine, Avina-Garcia sought an order prohibiting the prosecutor from referring to Doe as the "victim."  During arguments on the motions, Avina-Garcia's counsel additionally objected to referring to the complaining witness as Jane Doe.  The trial court promptly denied the motion as to "victim" but asked both sides to conduct further research regarding the propriety of using Jane Doe in this case.  Later, the prosecutor informed the trial court that the parties reached an agreement in which the prosecution would not use the term "victim" and would refer to the complaining witness as Jane Doe.  Based on this stipulation, Avina-Garcia's counsel withdrew her Doe objection.

### b. Analysis

Avina-Garcia contends his counsel's conduct fell below an objective standard of reasonableness because there was no legal basis for a non-sexual assault victim's identity to be withheld from the jury, and because the pseudonym "endowed" Doe with "a false aura of credibility" and unfairly

15

portrayed Avina-Garcia to be a violent person. We are not persuaded that counsel's acceptance of the stipulation and withdrawal of her Doe objection fell below an objective standard of reasonableness.

" 'In order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission.' " (*Williams*, *supra*, 16 Cal.4th at p. 215.) Here, the record reflects that a clear tactical reason for counsel's withdrawal of her objection was to gain the prosecutor's agreement not to use the term "victim." We therefore accord that tactical decision substantial deference. (*Ibid.*)

Avina-Garcia nevertheless maintains the stipulation was "unnecessary" and "can only be reasonably interpreted as [counsel's] ignorance of the law or an eagerness to unnecessarily accommodate." However, Avina-Garcia cites no authority holding or otherwise indicating that a Jane Doe pseudonym enhances a complaining witness's credibility or constitutes prosecutorial vouching for the witness. His reliance on *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121 (*Alvarado*) is unavailing. There, the identities of crucial witnesses were concealed from the defendant and his counsel both prior to and at trial, and such nondisclosure violated the defendant's right to confrontation by precluding effective investigation and cross-examination of those witnesses. (*Alvarado*, at p. 1151.) No such concealment occurred here, and *Alvarado* did not suggest that nondisclosure of a witness's identity at trial unfairly boosts their credibility.

Avina-Garcia further argues it was "unnecessary" for his counsel to withdraw her Doe objection based on the parties' stipulation, as both designations—"Doe" and "victim"—were improper. For this, Avina-Garcia relies on non-California decisional authorities holding that the use of the

16

term "victim" during a criminal trial may be inconsistent with the presumption of innocence. (See, e.g., *State v. Mundon* (2012 Haw.) 292 P.3d 205, 230.) What matters here, however, is that at the time counsel entered into the stipulation with the prosecution, the trial court had already denied Avina-Garcia's motion in limine to prohibit use of the term "victim." Thus, Avina-Garcia's counsel obtained some measure of tactical success by procuring the prosecutor's agreement not to use a term the court had already permitted him to use.

Finally, even assuming counsel performed deficiently, we conclude Avina-Garcia fails to demonstrate a reasonable probability of a different outcome had the Doe objection been maintained. (*Williams*, *supra*, 16 Cal.4th at pp. 214–215, citing *Strickland*, *supra*, 466 U.S. at pp. 687–688.) As mentioned, Avina-Garcia cites no authority supporting his notion that the use of a Jane Doe pseudonym enhanced Doe's credibility or painted Avina-Garcia as a violent person; thus, it is unlikely the trial court would have sustained the objection on those grounds. Moreover, we presume the jury followed the trial court's instructions not to consider Doe's anonymity for any reason other than maintaining her privacy. (See *People v. Thompson* (2010) 49 Cal.4th 79, 138.)[4]

In sum, we conclude trial counsel's tactical decision on this matter neither fell below an objective standard of reasonableness nor prejudiced Avina-Garcia.

---

[4] The jury was instructed as follows: "In this case, a person is called Jane Doe. This name is used only to protect her privacy, as required by law. The fact that the person is identified in this way is not evidence. Do not consider this fact for any purpose."

17

## 2. *Failing to Move to Exclude Gang Affiliation Statement*

Avina-Garcia next argues his counsel was ineffective for failing to object under Evidence Code section 1101[5] to Doe's testimony that Avina-Garcia claimed gang membership.

### a. Additional Background

Avina-Garcia argues "[t]he record is not clear" and is "vague" as to whether defense counsel's motions in limine included Doe's testimony about the gang affiliation statement. We conclude that, reasonably understood, these motions did not seek to prohibit admission of this aspect of Doe's testimony.

Instead, the topic of Doe's testimony about the gang affiliation statement arose indirectly during arguments on the People's second supplemental motion in limine. In that motion, the People sought to admit evidence of a prior arrest of Avina-Garcia by Healdsburg police officers in March 2021, both as a similar prior bad act to show his intent for purposes of count one in the instant case, and for impeachment purposes should be choose to testify. As the prosecutor argued, "the People would be cross-examining [Avina-Garcia] about the statement he made to Jane Doe about being in a gang. If Defendant denies he is in a gang or denies saying he told Jane Doe he was in a gang, the People seek to ask him about . . . statements [he made] to [a Healdsburg police officer] on March 23, 2021 and his pending

---

[5] Evidence Code section 1101, subdivision (a), prohibits evidence of a person's character to prove his or her conduct on a specified occasion, but subdivision (b) permits "the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented)[.]"

18

case involving him tagging various buildings in Healdsburg with gang graffiti." During that arrest, Avina-Garcia purportedly "indicat[ed] he was in a gang and, essentially, insinuat[ed] the same thing he said to Jane Doe."

Avina-Garcia's counsel objected on three grounds: (1) the information was not timely disclosed by the prosecution under section 1054.7; (2) the incident with Healdsburg police was not sufficiently similar to the incident with Doe; and (3) the evidence should be excluded under Evidence Code section 352 because it was more prejudicial than probative and could confuse the jury and risk undue consumption of time.

In response, the prosecutor argued that Avina-Garcia's counsel was provided with her client's rap sheet, which included the March 2021 arrest record and police report. The prosecutor further argued that the statements from the Healdsburg incident were relevant because "[i]n this case we have him telling Jane Doe that he's in a gang and she better watch out and then further coming back and firing . . . multiple gunshots into the air at the side of her house when she indicated that she was going to call the police." "The People are simply seeking to get in the statements that the defendant made to the officers which are almost exactly the same type of statements that he made to Jane Doe in this case[.]"

The trial court focused primarily on Avina-Garcia's objection under Evidence Code section 352, remarking that while it "anticipate[d] that Mr. Avina-Garcia's statement at least according to Ms. Doe that he's in a gang is going to be heard by this jury[,]" the court would not permit introduction of the Healdsburg police officers incident during the prosecution's case-in-chief because the probative value of the "conduct involving the Healdsburg police officers . . . is substantially outweighed and would create a substantial danger of undue prejudice in this case[.]" As for the People's motion to allow

19

questioning regarding the Healdsburg incident for impeachment purposes, the trial court found the issue was not ripe and deferred ruling on the motion.

At trial, Doe testified without objection that Avina-Garcia said "he belonged to a gang."

Avina-Garcia did not testify.

### b. Analysis

The record sheds no light on why Avina-Garcia's counsel did not object or move to exclude Doe's testimony that Avina-Garcia claimed gang membership. As such, this claim of ineffective assistance of counsel is not cognizable on direct appeal. (*Gamache*, *supra*, 48 Cal.4th at p. 391.) Although Avina-Garcia maintains there could be no conceivable explanation for counsel's actions, we disagree. Because of the trial court's remark that it "anticipate[d]" the gang affiliation statement would come in through Doe's testimony, Avina-Garcia's counsel could reasonably have viewed efforts to object to that testimony as futile. (See *People v. Diaz* (1992) 3 Cal.4th 495, 562; *People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091.)

In any case, we conclude Avina-Garcia was not prejudiced because he has not demonstrated a reasonable likelihood that the objection would have been sustained, or that the exclusion of the evidence would have led to a more favorable result. Here, the evidence that defendant claimed gang membership was part of Doe's testimony recounting the events of the crime; it was not, as Avina-Garcia conclusorily argues, "a merely gratuitous assertion unrelated to [the People's] theory of the case" and "in essence no different than the [Evidence Code] section 1101 subd. (b) evidence the court had excluded." The evidence the trial court previously excluded (under Evidence Code section 352, not Evidence Code section 1101, subdivision (b)) involved statements Avina-Garcia made to Healdsburg police on an unrelated

20

occasion. Avina-Garcia does not contend or establish that the evidence of his gang affiliation statement to Doe was subject to exclusion under the standards of Evidence Code section 352. (Cf. *People v. Cardenas* (1982) 31 Cal.3d 897, 904–905 [gang membership evidence should have been excluded under Evid. Code, § 352 because it had limited probative value and created substantial danger of undue prejudice].)

Nor does Avina-Garcia persuade us that the evidence was subject to exclusion under Evidence Code section 1101. Evidence of gang membership may be admissible where it is relevant to a material issue in the prosecution's case other than as character evidence. (See *People v. Sandoval* (1992) 4 Cal.4th 155, 175 [gang evidence admissible as relevant to motive].) Here, the gang affiliation statement was not offered as evidence of Avina-Garcia's character, but to prove he made an express or implied threat of force or violence in an attempt to dissuade Doe from reporting a crime—an element of felonious witness dissuasion under section 136.1, subdivision (c)(1).[6] As such, counsel had a conceivable reason not to object to admission of the gang affiliation statement under Evidence Code section 1101, namely, that the objection lacked merit. (See *People v. Cudjo* (1993) 6 Cal.4th 585, 616 [failure to object to admission of evidence is not ineffective assistance where "there was no sound legal basis for objection"].)

---

[6]     During closing arguments, the prosecutor argued that Avina-Garcia acted maliciously and threatened either directly or indirectly to use force or violence within the meaning of section 136.1 by "threaten[ing] [Doe] directly when he said I'm in a gang. That's a threat. There's no other reasonable way to take that. He threatened her indirectly by shooting a gun directly into the air outside of her house. That's another threat."

### 3. *Failure to Move for Separate Trials*

Avina-Garcia contends his counsel rendered ineffective assistance by failing to move for separate trials due to antagonistic defenses.

Section 1098 provides in pertinent part: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order separate trials." "Defendants 'charged with common crimes involving common events and victims' present ' "a classic case" ' for a joint trial." (*People v. Tafoya* (2007) 42 Cal.4th 147, 162 (*Tafoya*).)

Section 1098 "abrogated the former rule that codefendants enjoyed an absolute right to separate trials, restoring the common law rule which placed the matter within the discretion of the trial court." (*People v. Massie* (1967) 66 Cal.2d 899, 916.) In *Massie*, our Supreme Court held that courts "should separate the trials of codefendants in the face of an incriminating confession, prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony." (*Massie*, at pp. 916–917, internal footnotes omitted.)

Some years later, the Supreme Court clarified that "the fact of conflicting or antagonistic defenses *alone*" does not compel severance, because such a rule "would negate the legislative preference for joint trials and separate trials 'would appear to be mandatory in almost every case.' [Citation.] [¶] Moreover, although no California case has discussed at length what constitutes an 'antagonistic defense,' the federal courts have almost uniformly construed that doctrine very narrowly. Thus, '[a]ntagonistic defenses do not *per se* require severance, even if the defendants are hostile or attempt to cast the blame on each other.' [Citation.] 'Rather, to obtain

severance on the ground of conflicting defenses, it must be demonstrated that the conflict is so prejudicial that [the] defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.' [Citations.] Stated another way, ' "mutual antagonism" only exists where the acceptance of one party's defense will preclude the acquittal of the other.' " (*People v. Hardy* (1992) 2 Cal.4th 86, 168 (*Hardy*).) "When, however, there exists sufficient independent evidence against the moving defendant, it is not the conflict alone that demonstrates his or her guilt, and antagonistic defenses do not compel severance." (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 41 [*Coffman and Marlow*].)

As with Avina-Garcia's prior ineffective assistance claim, the record sheds no light on why his trial counsel did not move for separate trials. In light of the authorities above, counsel could reasonably have concluded a motion to sever was futile because defendants were charged with having committed common crimes involving common events and a common victim, making this a classic case for a joint trial. (*Tafoya*, *supra*, 42 Cal.4th at p. 162.)

Avina-Garcia nevertheless maintains there was no conceivable reason to agree to a joint trial given Zepeda's earlier attempts to obtain prosecutorial leniency in exchange for incriminating testimony against Avina-Garcia. Avina-Garcia acknowledges, however, that his counsel may not have known at the start of trial whether Zepeda would testify. Certainly, as it turns out, Zepeda's defense claiming he did not know Avina-Garcia had a firearm and was going to use it was at odds with one facet of Avina-Garcia's defense—that phone records between the defendants at the time of the shooting raised a reasonable doubt that Avina-Garcia was the shooter. But Avina-Garcia falls short of establishing, pursuant to the antagonistic defense doctrine, that this

23

tension was so irreconcilable that the jury would have unjustifiably inferred from the conflict *alone* that *both* defendants were guilty. (*Hardy*, *supra*, 2 Cal.4th at p. 168.) The jury could have believed Zepeda's testimony and found that only Avina-Garcia had the requisite intent to commit witness dissuasion. Or, it could have found that even if Avina-Garcia was the shooter, the evidence supported one of his alternative defense theories—e.g., there were no witnessed crimes prior to the shooting; the shooting was merely an act of anger—none of which was antagonistic to Zepeda's defense.

Furthermore, because there was "sufficient independent evidence" against Avina-Garcia, we cannot say it was the "conflict alone" that demonstrated his guilt. (*Coffman and Marlow*, *supra*, 34 Cal.4th at p. 41.) As recounted above, Doe's identification of the pickup truck's license plate led police directly to the Kearney Street residence where the pickup truck was found. Defendants then arrived at that same location in a vehicle that matched Doe's description of the second vehicle. That vehicle was later found to contain an empty firearm and spent shell casings. Doe, who had previously stood about five to ten feet from Avina-Garcia during the first encounter, confidently identified him during the infield showup as the shooter in the passenger seat during the second encounter. Thus, notwithstanding any antagonism between defendants, the prosecution presented a strong case against Avina-Garcia independent of Zepeda's testimony.

For the same reasons, even if we assume counsel should have moved for separate trials, we conclude Avina-Garcia fails to show resulting prejudice. In light of the strong circumstantial evidence against Avina-Garcia independent of Zepeda's incriminating testimony, we see no reasonable probability that Avina-Garcia would have obtained a more favorable result

had his counsel successfully moved for severance. (*Williams, supra,* 16 Cal.4th at pp. 214–215, citing *Strickland, supra,* 466 U.S. at pp. 687–688.) The same chain of evidence, including Doe's eyewitness identification of Avina-Garcia, would have been presented in the separate trial, likely leading to the same result.

### C. Instructional Error

Avina-Garcia contends the trial court erred by failing to give unanimity instructions to the jury as to (1) which crimes Doe witnessed defendants committing prior to the dissuading acts; and (2) which acts by defendants constituted witness dissuasion by force or threat. According to Avina-Garcia, the evidence disclosed three possible acts that could have constituted acts of witness dissuasion—(1) the gang affiliation statement, (2) throwing beer bottles at Doe, and (3) firing the gun—and thus, the trial court was required to instruct the jurors that they had to unanimously agree on the specific act or acts that supported the conviction.

"A criminal defendant has a constitutional right to a unanimous jury verdict, meaning 'the jury must agree unanimously the defendant is guilty of a specific crime.' [Citation.] Thus, 'if one criminal act is charged, but the evidence tends to show the commission of more than one such act, "either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." [Citations.]' [Citation.] Accordingly, where no election has been made by the prosecution, the trial court has a sua sponte duty to provide a unanimity instruction." (*People v. Jo* (2017) 15 Cal.App.5th 1128, 1178 (*Jo*), italics omitted.)

"Neither an election nor a unanimity instruction is required when the crime falls within the 'continuous conduct' exception." (*People v. Salvato*

25

(1991) 234 Cal.App.3d 872, 882 (*Salvato*).) "This exception arises in two contexts. [Citation.] First, a unanimity instruction is not required when the criminal acts are so closely connected that they form part of the same transaction, and thus one offense. The second context occurs when the statute defines the offense to comprise a continuous course of conduct over a period of time. [Citation.] 'Cases applying the continuous conduct exception have generally relied on statutory interpretation to justify a conclusion that the nature of the crime is ongoing.' " (*Jo*, *supra*, 15 Cal.App.5th at p. 1178.)

*Salvato* is instructive. There, the defendant was charged with multiple counts of witness dissuasion (§ 136.1), making terrorist threats (§ 422), obtaining signatures by extortionate means (§ 522), and sending extortionate letters (§ 523), arising from threatening communications he made to his wife and her attorney over a nine-month period. (*Salvato*, *supra*, 234 Cal.App.3d at p. 876.) Before trial, the defendant moved to require the prosecution to elect the specific acts it would try to prove for each count, but the motion was denied. (*Id.* at p. 878.) The jury was then instructed that " 'all jurors must agree that [defendant] committed the same act or acts,' " before it found the defendant guilty on all but one of the seven counts. (*Ibid*.)

Reversing the judgment in part, *Salvato* held the trial court erred by rejecting the demand for a prosecutorial election as to the criminal threats count under section 422, but *not* as to the counts for witness dissuasion under section 136.1, as the latter counts fell within the continuous course of conduct exception to the unanimity requirement. As the court explained, "[d]ecisions on the continuous course of conduct exception have focused on the statutory language in an attempt to determine whether the Legislature intended to punish individual acts or entire wrongful courses of conduct." (*Salvato*, *supra*, 234 Cal.App.3d at p. 882.) On that score, *Salvato* found that the

26

language of section 136.1 "focuses on an unlawful goal or effect, the prevention of testimony, rather than on any particular action taken to produce that end. 'Prevent' and 'dissuade' denote conduct which can occur over a period of time as well as instantaneously. The gravamen of the offense is the cumulative outcome of any number of acts, any one of which alone might not be criminal. Thus it falls within the continuous conduct exception, and no election or unanimity instruction was required." (*Salvato*, at p. 883.) However, *Salvato* held an election should have been required for the criminal threats count because the language of section 422 focuses on specific acts. (*Id.* at pp. 883–884.) The error was prejudicial notwithstanding the unanimity instruction given because the defendant committed numerous acts over a nine-month period which could have served as the basis for the criminal threats count, and he had different defenses for the distinct acts. (*Id.* at p. 884.)

Like *Salvato*, we conclude the charge of witness dissuasion required no unanimity instruction because it fell within the second aspect of the continuous course of conduct exception. Because section 136.1 punishes the overall goal of dissuading a witness, not any particular action taken to achieve that goal, the trial court was not required to instruct that unanimity was required as to any specific act of witness dissuasion in order to convict under this statute. (*Salvato*, *supra*, 234 Cal.App.3d at p. 883.) Avina-Garcia does not attempt to distinguish *Salvato* or contend it was wrongly decided; to the contrary, he claims *Salvato* supports his argument that a unanimity instruction was required. We disagree, as Avina-Garcia appears to rely on *Salvato's* holding on the criminal threats count (irrelevant here) rather than its pertinent analysis of section 136.1.

27

We also reject Avina-Garcia's contention that the trial court was required to give a unanimity instruction for the witnessed crimes, i.e., reckless driving and disturbing the peace. He cites no authority for this proposition (see *Williams*, *supra*, 16 Cal.4th at p. 226, fn. 6), which is unpersuasive in any event. " 'The unanimity requirement is constitutionally rooted in the principle that a criminal defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged.' " (*People v. Percelle* (2005) 126 Cal.App.4th 164, 181.) Because Avina-Garcia was not charged for the witnessed crimes, the constitutional principle underlying the unanimity requirement is inapplicable.

## D. Cumulative Error

Finally, Avina-Garcia contends the cumulative effect of the claimed errors infected the trial with such unfairness as to undermine confidence in the result. Under the cumulative error doctrine, we reverse the judgment if there is a "reasonable probability" that the jury would have rendered a result more favorable to defendant absent a combination of errors. (E.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 646.) However, we have found no error, and no prejudice where we have assumed error. Considered together, the assumed errors remain harmless. (See *People v. Cain* (1995) 10 Cal.4th 1, 82 ["Defendant was entitled to a fair trial, not a perfect one."].)

DISPOSITION

The judgments are affirmed.

28

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.


*People v. Zepeda* (A165787)
*People v. Avina-Garcia* (A165924)